## ST. LOUIS AND SAN FRANCISCO RAILWAY COMPANY v. MATHEWS.

### ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 105. Argued and submitted November 4, 1896. — Decided January 4, 1897.

A statute of a State, which enacts that every railroad corporation, owning or operating a railroad in the State, shall be responsible in damages to the owner of any property injured or destroyed by fire communicated, directly or indirectly, by locomotive engines in use upon its railroad; and which provides that it shall have an insurable interest in the property upon the route of its railroad, and may procure insurance thereon in its own behalf; does not violate the Constitution of the United States, as depriving the railroad company of its property without due process of law, or as denying to it the equal protection of the laws, or as impairing the obligation of the contract made between the State and the company by its incorporation under general laws imposing no such liability.

THIS was an action brought in an inferior court of the State of Missouri, by an owner of land in St. Louis county, against a railroad corporation organized under the laws of the State, and owning and operating with locomotive engines a line of railway adjoining the plaintiff's land, to recover damages for the destruction of the plaintiff's dwelling-house, barn, out

buildings, shrubbery and personal property upon that land, by fire communicated from one of those engines on August 9, 1887.

The petition contained two counts, the first of which alleged negligence on the part of the defendant; and the second did not, but was founded on the statute of Missouri of March 31, 1887, by which "each railroad corporation, owning or operating a railroad in this State, shall be responsible in damages to every person and corporation whose property may be injured or destroyed by fire communicated, directly or indirectly, by locomotive engines in use upon the railroad owned or operated by such railroad corporation; and each such railroad corporation shall have an insurable interest in the property upon the route of the railroad owned or operated by it, and may procure insurance thereon in its own behalf, for its protection against such damages." Missouri Laws of 1887, p. 101; Rev. Stat. of 1889, § 2615.

The answer, among other defences, set up that the statute violated the Constitution of the United States, by depriving the defendant of its property without due process of law; and by denying to it the equal protection of the laws; and by impairing the obligation of the contract made between it and the State, "by the terms and provisions of which it was impliedly agreed that said defendant might and could use fire for the purpose of generating steam to propel said locomotive engines and cars attached thereto, and be responsible only for the negligent and careless use thereof."

The defendant was incorporated September 10, 1875, under the general laws of the State, which authorized railroad corporations to be formed by voluntary articles of association filed in the office of the secretary of State; and to lay out and construct their railroad; to take lands for the purpose; and "to take and convey persons and property on their railroad by the power or force of steam, or of animals, or by any mechanical power, and to receive compensation therefor." Missouri Gen. Stat. of 1865, c. 63, §§ 1, 2; Rev. Stat. of 1889, §§ 2542, 2543.

At the trial, the plaintiff introduced evidence tending to

support the allegations of the petition; and the court, at his request, instructed the jury that "if they believe from the evidence that during the month of August, 1887, plaintiff was the owner of the land in the petition described, and defendant was the owner or operating a railroad adjoining said land, having locomotive engines in use upon said road, and that on August 9, 1887, fire was communicated from a locomotive engine, then in use upon the railroad owned or operated by defendant, to plaintiff's property on his said land, and thereby the buildings and other property in the petition mentioned, or any of it, were destroyed, then the jury will find for the plaintiff."

The court refused to give to the jury the following instruction requested by the defendant: "Though the jury may believe from the evidence that fire was communicated from a locomotive engine in use on defendant's railroad to plaintiff's property, as charged in the second count of plaintiff's petition, yet that fact is only *prima facie* evidence of negligence on the part of defendant, and unless the jury believe from the whole evidence in the case that said fire was either negligently set out by defendant, or was communicated to plaintiff's property by reason of defendant's negligence, the plaintiff cannot recover."

The defendant excepted to the instruction given, as well as to the refusal to instruct as requested; and, after verdict and judgment for the plaintiff, appealed to the Supreme Court of the State, which held the statute to be constitutional, and affirmed the judgment. 121 Missouri, 298. The defendant sued out this writ of error.

*Mr. David D. Duncan*, (with whom were *Mr. John F. Dillon* and *Mr. Winslow F. Pierce* on his brief,) for plaintiff in error.

*Mr. L. F. Parker* filed a brief for plaintiff in error in which the following citations were made: *Fletcher* v. *Peck*, 6 Cranch, 87; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Von Hoffman* v. *Quincy*, 4 Wall. 535.; *Green* v. *Biddle*, 8

Wheat. 1; *Planters' Bank* v. *Sharp*, 6 How. 301; *Commonwealth* v. *Erie & Western Transp. Co.*, 107 Penn. St. 112; *Pennsylvania Railroad* v. *Baltimore & Ohio Railroad*, 60 Maryland, 263; *Bank of the Republic* v. *Hamilton*, 21 Illinois, 53; *Payne* v. *Baldwin*, 3 Sm. & Marsh. 661; *Edwards* v. *Kearzey*, 96 U. S. 595; –*Howard* v. *Bugbee*, 24 How. 461; *Meriwether* v. *Garrett*, 102 U. S. 472; *Bronson* v. *Kinzie*, 1 How. 311; *McCracken* v. *Hayward*, 2 How. 608; *Louisiana* v. *New Orleans*, 102 U. S. 203; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *New Orleans Water Works* v. *Rivers*, 115 U. S. 674; *People* v. *Jackson & Michigan Plank Road Co.*, 9 Michigan, 285; *Sloan* v. *Pacific Railroad*, 61 Missouri, 24; *Smith* v. *Hannibal & St. Joseph Railroad*, 37 Missouri, 287; *Burroughs* v. *Housatonic Railroad*, 15 Connecticut, 124; *Moshier* v. *Utica & Schenectady Railroad*, 8 Barb. 477; *Rood* v. *N. Y. & Erie Railroad*, 18 Barb. 80; *Knoop* v. *Piqua Branch, Bank of Ohio*, 16 How. 369; *Dodge* v. *Woolsey*, 18 How. 331; *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Ashbury Railway &c. Co.* v. *Riche*, L. R. 7 H. L. Cas. 653; *Bailey* v. *Phil., Wilmington &c. Railroad*, 4 Harr. (Del.) 389; *Lake View* v. *Rose Hill Cemetery*, 70 Illinois, 191; *Ohio & Mississippi Railroad* v. *Lackey*, 78 Illinois, 55; *Thorpe* v. *Rutland & Burlington Railroad*, 27 Vermont, 140; *Benson* v. *New York*, 10 Barb. 223; *Small* v. *Chicago, Rock Island &c. Railroad*, 50 Iowa, 338; *Vincennes University* v. *Indiana*, 14 How. 268; *Scotland County* v. *Missouri, Iowa &c. Railroad*, 65 Missouri, 123; *State* v. *Greer*, 78 Missouri, 188; *Pearson* v. *Portland*, 69 Maine, 278; *State* v. *Hayes*, 81 Missouri, 574; *Chicago, St. Louis &c. Railway* v. *Moss*, 60 Mississippi, 641; *Slaughter House cases*, 16 Wall. 36; *Railroad Tax cases*, 13 Fed. Rep. 722; *Santa Clara County* v. *Southern Pacific Railroad*, 118 U. S. 394; *Ohio & Mississippi Railroad* v. *Lackey*, 78 Illinois, 55; *Kahle* v. *Hobein*, 30 Mo. App. 472; *Zeigler* v. *South & North Alabama Railroad*, 58 Alabama, 594; *Miller* v. *Martin*, 16 Missouri, 508; *Catron* v. *Nichols*, 81 Missouri, 80; *Wally's Heirs* v. *Kennedy*, 2 Yerg. 554; *Chapman* v. *Atlantic & St. Lawrence Railroad*, 37 Maine, 92; *Ross* v. *Boston & Worcester Railroad*, 6 Allen, 87.

*Mr. Percy Werner* and *Mr. Garland Pollard,* for defendant in error, submitted on their brief.

Mr. Justice Gray, after stating the case, delivered the opinion of the court.

The only question presented by the record, of which this court has jurisdiction, is whether there is anything inconsistent with the Constitution of the United States in the statute of Missouri of March 31, 1887, by which every railroad corporation owning or operating a railroad in the State is made responsible in damages for property of any person injured or destroyed by fire communicated by its locomotive engines; and is declared to have an insurable interest in property along its route, and authorized to insure such property, for its protection against such damages.

It has been strenuously argued, in behalf of the plaintiff in error, that this statute is an arbitrary, unreasonable and unconstitutional exercise of legislative power, imposing an absolute and onerous liability for the consequences of doing a lawful act, and of conducting a lawful business in a lawful and careful manner; and that the statute violates the Constitution of the United States, by depriving the railroad company of its property without due process of law, by denying to it the equal protection of the laws, and by impairing the obligation of the contract previously made between it and the State by its incorporation under general laws authorizing it to convey passengers and freight over its railroad by the use of locomotive engines.

The argument that this statute is in excess of the power of the legislature may be the most satisfactorily met by first tracing the history of the law regarding the liability of persons for fire originating on their own premises and spreading to the property of others.

At common law, every man appears to have been obliged, by the custom of the realm, to keep his fire safe so that it should not injure his neighbor; and to have been liable to an action if a fire, lighted in his own house, or upon his land, by

the act of himself, or of his servants or guests, burned the
house or property of his neighbor, unless its spreading to his
neighbor's property was caused by a violent tempest or other
inevitable accident which he could not have foreseen. Thirn-
ing, C. J., and Markham, J., in Beaulieu v. Finglam, Year-
book 2 H. IV, 18; Anon., Cro. Eliz. 10; 1 Rol. Ab. 1, Action
sur Case, B; 1 D'Anvers Ab., Actions, B; Turberville v.
Stamp, (1698) Comyns, 32; S. C., 1 Salk. 13; Holt, 9; 1 Ld.
Raym. 264; 12 Mod. 152; Com. Dig., Action upon the Case
for Negligence, A, 6; 1 Vin. Ab. 215, 216; 1 Bac. Ab.,
Action on the Case, F, (Amer. ed. 1852) p. 122; Canterbury
v. Attorney General, 1 Phil. Ch. 306, 316–319; Filliter v.
Phippard, 11 Q. B. 347, 354; Furlong v. Carroll, 7 Ontario
App. 145, 159.

The common law liability in case of ordinary accident,
without proof of negligence, was impliedly recognized in the
statute of Anne, passed within ten years after the decision in
Turberville v. Stamp, above cited, and providing that "no
action, suit or process whatsoever shall be had, maintained or
prosecuted against any person in whose house or chamber any
fire shall accidentally begin, or any recompense be made by
such person for any damage suffered or occasioned thereby;
any law or usage or custom to the contrary notwithstanding."
Stats. 6 Anne, (1707) c. 31 [58], § 7; 8 Statutes of the Realm,
795; 10 Anne, (1711) c. 14 [24], § 1; 9 Statutes of the Realm,
684. By the statute of 14 Geo. III, (1774) c. 78, § 86, the
statute of Anne was extended to "any person in whose house,
chamber, stable, barn or other building, or on whose estate,
any fire shall accidentally begin."

In modern times in England, the strict rule of the common
law as to civil liability in damages for fire originating on one's
own land, and spreading to property of another, has been
recognized as still existing, except so far as clearly altered by
statute.

In The King v. Pease, (1832) 4 B. & Ad. 30; S. C., 1 Nev.
& Man. 690, a corporation, expressly authorized by act of Par-
liament to establish a railway between certain points, and to
use locomotive engines thereon, was held not to be liable to

an indictment for a nuisance by frightening horses travelling upon a highway parallel to the railroad.

In *Aldridge* v. *Great Western Railway*, (1841) 3 Man. & Gr. 515; *S. C.*, 4 Scott N. R. 156, which was an action against a railway corporation created by similar acts of Parliament, to recover damages for property destroyed by fire kindled by sparks from a locomotive engine, it was argued for the plaintiff that by the common law a civil action for damages could be sustained by proof of injury, without evidence of negligence. See Broom's Legal Maxims, (5th ed.) 366, 367; Holmes on Common Law, 85–88. But the court held that the corporation could not be held liable, unless negligent. In *Pigot* v. *Eastern Counties Railway*, (1846) 3 C. B. 229, the same rule was recognized, although the fact of the property having been fired by sparks from the engine was held sufficient proof of negligence.

In the course of the argument in *Blyth* v. *Birmingham Waterworks*, (1856) 11 Exch. 781, 783, Baron Martin said: "I held, in a case tried at Liverpool in 1853, that, if locomotives are sent through the country emitting sparks, the persons doing so incur all the responsibilities of insurers; that they were liable for all the consequences."

In *Vaughan* v. *Taff Vale Railway*, (1858) 3 H. & N. 743, the Court of Exchequer held that a railway company, expressly authorized by its charter to use locomotive engines on its railway, was responsible for damages caused to property by fire communicated from such engines, although it had taken every precaution in its power to prevent the injury. But the judgment was reversed in the Exchequer Chamber; and Lord Chief Justice Cockburn said: "Although it may be true, that if a person keeps an animal of known dangerous propensities, or a dangerous instrument, he will be responsible to those who are thereby injured, independently of any negligence in the mode of dealing with the animal, or using the instrument; yet when the legislature has sanctioned and authorized the use of a particular thing, and it is used for the purpose for which it was authorized, and every precaution has been used to prevent injury, the sanction of the legislature

carries with it this consequence, that if damage results from the use of such thing independently of negligence, the party using it is not responsible."   5 H. & N. (1860) 679, 685.

The final decision in that case has since been considered in England as establishing that a railway company which by act of Parliament has been expressly authorized to use locomotive engines upon its railway, without being declared to be responsible for fires communicated from those engines, is not, in the absence of negligence on its part, liable for damages caused by such fires.  *Fremantle* v. *Northwestern Railway*, (1861) 10 C. B. (N. S.) 89; *Hammersmith &c. Railway* v. *Brand*, (1869) L. R. 4 H. L. 171; *Smith* v. *London & Southwestern Railway*, (1870) L. R. 6 C. P. 14, 21, 22; *London, Brighton & Southcoast Railway* v. *Truman*, (1885) 11 App. Cas. 45.

On the other hand, a railway company, chartered by act of Parliament in 1832 to make and maintain a "railway or tramroad for the passage of wagons, engines and other carriages" for the purpose of conveying coals and other minerals, and neither expressly authorized nor prohibited to use locomotive engines, was held liable for damages by sparks from such an engine, although proved to have taken all reasonable precautions to prevent the emission of sparks; Mr. Justice Blackburn saying that "the defendants were using a locomotive engine with no express parliamentary powers making lawful that use, and they are therefore at common law bound to keep the engines from doing injury, and if the sparks escape and cause damage, the defendants are liable for the consequences, though no actual negligence be shown on their part"; and that, in order to bring them within the decision in *Vaughan* v. *Taff Vale Railway*, above cited, "it is essential to show that their act authorized the use of locomotive engines, and it is not enough to show that it authorized the making and using of a railway, and that there are no words, either prohibiting the use of locomotives, or showing that the legislature meant to prohibit the use."  *Jones* v. *Festiniog Railway*, (1868) L. R. 3 Q. B. 733, 736, 737.

So where acts of Parliament, authorizing and regulating

the use of locomotive engines on turnpike and other roads, provided that nothing in the acts contained should be construed as authorizing any person to use upon the highway a locomotive engine so constructed or used as to cause a public or private nuisance; and that every person so using such an engine should be liable to an action for such use, when such an action could have been maintained before the passage of the acts; the Court of Appeal held that a man who used upon a public highway a locomotive engine constructed in conformity with the provisions of the acts, and managed and conducted with all reasonable care and without negligence, was liable for a destruction of property on land adjoining the highway by sparks proceeding from his engine; Lord Justice Bramwell saying: "The passing of the engine along the road is confessedly dangerous, inasmuch as sparks cannot be prevented from flying from it. It is conceded that at common law an action may be maintained for the injury suffered by the plaintiffs. The Locomotive Acts are relied upon as affording a defence; but, instead of helping the defendant, they show not only that an action would have been maintainable at common law, but also that the right to sue for an injury is carefully preserved. It is just and reasonable that if a person uses a dangerous machine, he should pay for the damage which it occasions; if the reward which he gains for the use of the machine will not pay for the damage, it is mischievous to the public and ought to be suppressed, for the loss ought not to be borne by the community or the injured person. If the use of the machine is profitable, the owner ought to pay compensation for the damage." *Powell* v. *Fall*, (1880) 5 Q. B. D. 597, 601.

In this country, the strict rule of the common law of England as to liability for accidental fires has not been generally adopted; but the matter has been regulated, in many States, by statute. *Clark* v. *Foot*, 8 Johns. 329; *Bachelder* v. *Heagan*, 18 Maine, 32; *Tourtellot* v. *Rosebrook*, 11 Met. 460; *Finley* v. *Langston*, 12 Missouri, 120; *Miller* v. *Martin*, 16 Missouri, 508; *Catron* v. *Nichols*, 81 Missouri, 80; Cooley on Torts, 14, 590–592; 1 Thompson on Negligence, 148–150.

In the Colony of Massachusetts, from the first settlement, it was an object of legislation, "for the preservation of houses, hay, boards, timber, &c." 1 Mass. Col. Rec. (1631) 90, (1639) 281; 3 Mass. Col. Rec. (1646) 102. In 1660, or earlier, it was enacted that "whoever shall kindle any fires in the woods, or grounds lying in common, or enclosed, so as the same shall run into corn grounds or enclosures," at certain seasons, should "pay all damages, and half so much for a fine"; "provided that any man may kindle fire in his own ground so as no damage come thereby either to the country or to any particular person." Mass. Col. Laws of 1660, p. 31; of 1672, p. 51.

Soon after the introduction of railroads into the United States, the legislature of the State of Massachusetts, by the statute of 1837, c. 226, provided that a railroad corporation should be held responsible in damages for any injury done to buildings or other property of others by fire communicated from its locomotive engines, "unless the said corporation shall show that they have used all due caution and diligence, and employed suitable expedients to prevent such injury"; and that any railroad corporation should have an insurable interest in property along its route for which it might be so held responsible in damages, and might procure insurance thereon in its own behalf.

Three years later, that statute was repealed, and was reenacted with the omission of the clause above quoted, thus making the liability of the railroad corporation absolute, and not dependent upon negligence on its part. And the statute in this form, with merely verbal changes, has been continued in force by successive reenactments. Mass. Stat. 1840, c. 85; Gen. Stat. of 1860, c. 63, § 101; Stat. 1874, c. 372, § 106; Pub. Stat. of 1882, c. 112, § 214.

In the first reported case under this statute, it was held by the Supreme Judicial Court of Massachusetts that the liability of the railroad company was not restricted to a building by the side of its road, which the very particles of fire emanating from the engines fell upon and kindled a flame in, but extended to a building across a street, set on fire by sparks wafted by the wind from the first building while it was burning; and

Chief Justice Shaw, in delivering judgment, said: "We consider this to be a statute purely remedial, and not penal. Railroad companies acquire large profits by their business. But their business is of such a nature as necessarily to expose the property of others to danger; and yet, on account of the great accommodation and advantage to the public, companies are authorized by law to maintain them, dangerous though they are, and so they cannot be regarded as a nuisance. The manifest intent and design of this statute, we think, and its legal effect, are, upon the considerations stated, to afford some indemnity against this risk to those who are exposed to it, and to throw the responsibility upon those who are thus authorized to use a somewhat dangerous apparatus, and who realize a profit from it." *Hart* v. *Western Railroad*, (1847) 13 Met. 99.

Two years afterwards, the same court adjudged that the statute applied to railroad companies incorporated before its passage; and that it extended as well to estates, a part of which had been conveyed by the owner, as to those of which a part had been taken by law, for the purposes of a railroad; and Mr. Justice Dewey, in delivering judgment, said: "We can perceive no sound distinction between the cases supposed. Each of these modes for acquiring the necessary real estate for the purpose of a railroad is authorized, both by the general laws and by the acts creating railroad corporations. In each, the landowner is supposed to receive full satisfaction for all the injuries necessarily resulting from the use of the same for a railroad. But with the use of locomotive engines, greater hazard to contiguous buildings and property owned by the adjacent landowners may arise, than was originally contemplated, or ought to be left to the ordinary common law remedies. We consider this provision of the statute of 1840, c. 85, as one of those general remedial acts passed for the more effectual protection of property against the hazards to which it has become subject by the introduction of the locomotive engine. The right to use the parcel of land appropriated to a railroad does not deprive the legislature of the power to enact such regulations, and impose such liabilities for injuries suffered from the mode of using the road, as the occasion and

circumstances may reasonably justify." *Lyman* v. *Boston & Worcester Railroad*, (1849) 4 Cush. 288.

The same statute was held to cover personal property in a building, and growing trees, destroyed by fire from a locomotive engine; Chief Justice Bigelow saying: "It is not a penal statute, but purely remedial in its nature; and it is to be interpreted fairly and liberally, so as to secure to parties injured an indemnity from those who reap the advantages and profits arising from the use of a dangerous mode of locomotion, by means of which buildings and other property are destroyed." *Ross* v. *Boston & Worcester Railroad*, (1863) 6 Allen, 87.

Again, in *Ingersoll & Quigley* v. *Stockbridge & Pittsfield Railroad*, (1864) 8 Allen, 438, it was held, following *Hart* v. *Western Railroad*, above cited, to be immaterial that a building was destroyed by the spreading of a fire from other buildings on which the sparks from the engine had fallen; and it was also held to be immaterial that the building stood partly within the location of the railroad; Mr. Justice Hoar saying: "The fact that a building or other property stands near a railroad, or partly or wholly on it, if placed there with the consent of the company, does not diminish their responsibility, in case it is injured by fire communicated from their locomotives. The legislature have chosen to make it a condition of the right to run carriages impelled by the agency of fire, that the corporation employing them shall be responsible for all injuries which the fire may cause."

Upon facts very like those of that case, this court, at October term, 1875, sustained an action under a statute of Vermont, copied from the Massachusetts statute of 1837; and, speaking by Mr. Justice Strong, said: "The statute was designed to be a remedial one. In Massachusetts, there is a statute almost identical with that of Vermont"; and, referring to that case as directly in point, quoted the passage above cited from the opinion, ending with the words: "The legislature have chosen to make it a condition of the right to run carriages impelled by the agency of fire, that the corporation employing them shall be responsible for all injuries which the fire may cause." *Grand Trunk Railway* v. *Richardson*, 91 U. S. 454, 456, 472.

The statute of Massachusetts, existing at the time of that decision and for thirty-five years before, and enforced in the Massachusetts cases, imposed a liability upon the railroad company, wholly independent of negligence on its part; and the terms in which this court referred to that statute, and quoted from one of those cases, show that no doubt of its constitutionality was entertained.

In Maine and in New Hampshire, statutes substantially like the statute of Massachusetts of 1840, making railroad corporations absolutely liable, without regard to negligence, for injuries to property by fire communicated from their locomotive engines, were enacted in 1842, and have been since continued in force, and their validity upheld by the highest courts of those States, as applied to corporations created either before or after their passage. Maine Stat. 1842, c. 9, § 5; Rev. Stat. of 1883, c. 51, § 64; *Chapman* v. *Atlantic & St. Lawrence Railroad,* 37 Maine, 92; *Pratt* v. *Same,* 42 Maine, 579; *Stevens* v. *Same,* 46 Maine, 95; *Sherman* v. *Maine Central Railroad,* 86 Maine, 422; N. H. Rev. Stat. of 1842, c. 142, §§ 8, 9; Gen. Stat. of 1867, c. 148, §§ 8, 9; Gen. Laws of 1878, c. 162, §§ 8, 9; *Hookset* v. *Concord Railroad,* 38 N. H. 242; *Rowell* v. *Railroad,* 57 N. H. 132; *Smith* v. *Boston & Maine Railroad,* 63 N. H. 25.

In Connecticut, before any legislation towards holding railroad corporations liable for property burned by sparks from their locomotive engines, they were held not to be so liable, if their use of such engines was with due care and skill, and in conformity with their charters. *Burroughs* v. *Housatonic Railroad,* 15 Conn. 124. The subsequent legislation upon the subject, and the reasons for it as stated by the Supreme Court of the State, were as follows: Experience demonstrated that in all cases of fire set by the operation of railroads it was extremely difficult, and in some cases impossible, to prove negligence even when it existed. This led to the passage in 1840, and to the reënactment in 1875, of a statute providing that, in all actions for any injury occasioned by fire communicated by any railway locomotive engine in the State, proof that such fire was so communicated should be *prima facie*

evidence of negligence. Conn. Stat. 1840, c. 26; Gen. Stat. of 1875, tit. 19, c. 11, § 29. Even then, the difficulty was but partially removed, for in most cases the defendant could easily produce evidence of due care, and the plaintiff would be ill prepared to meet it. Therefore, in 1881, the legislature took the broad, equitable ground that upon proof of the fact that the locomotive engine communicated fire to and destroyed property the company should be liable, independently of the question of negligence; and accordingly enacted another statute, in the words of the Massachusetts statute of 1840, before mentioned, imposing an absolute liability, qualified only by the insertion of the words, " without contributory negligence on the part of the person or corporation entitled to the care and possession of the property injured." Conn. Stat. 1881, c. 92. The statutes of 1875 and 1881 were both reënacted in the Revised Statutes of 1888, §§ 1096, 3581. *Martin* v. *New York & New England Railroad*, 62 Conn. 331, 339. The provisions of the statute of 1881 have been repeatedly upheld and enforced. *Simmonds* v. *New York & New England Railroad*, 52 Conn. 264; *Grissell* v. *Housatonic Railroad*, 54 Conn. 447; *Regan* v. *New York & New England Railroad*, 60 Conn. 124; *Martin* v. *Same*, above cited.

In *Grissell* v. *Housatonic Railroad*, the validity of that statute was strongly assailed upon all the grounds taken by the plaintiff in error in the present case; and the court, in the course of a well-considered opinion, said : " It is a mistake to suppose that it necessarily transcends the limits of valid legislation, or violates the principle of a just equality before the law, if the one using extrahazardous materials or instrumentalities, which put in jeopardy a neighbor's property, is made to bear the risk and pay the loss thereby occasioned, if there is no fault on the part of the owner of the property, even though negligence in the other party cannot be proved." The court referred to early statutes of Connecticut, which required no proof of negligence in two classes of actions of tort; the one, making the owner of a dog, or, if the owner was a minor or an apprentice, his parent, guardian or master, liable for all damage done by the dog; Conn. Stat. of 1789, Acts and

Laws of 1796, p. 383; Gen. Stat. of 1875, p. 267, § 3; Rev. Stat. of 1888, § 3761; *Russell* v. *Tomlinson,* 2 Conn. 206; *Woolf* v. *Chalker,* 31 Conn. 121, 133; the other, making every person setting a fire on his own or any land, that runs upon the land of any other person, liable for all damage done by the fire. Conn. Col. Laws of 1750, p. 247; 2 Swift's System, 81; Gen. Stat. of 1875, p. 489, § 6; Rev. Stat. of 1888, § 1344; *Grannis* v. *Cummings,* 25 Conn. 165; *Ayer* v. *Starkey,* 30 Conn. 304. The court added: "We are not aware that the validity of any of these statutes has been called in question. The dangerous character of the thing used is always to be considered in determining the validity of statutory regulations fixing the liability of parties so using it. Fire has always been subject to arbitrary regulations, and the common law of England was more severe and arbitrary on the subject than any statute. In Rolle's Abridgment (Action on the Case, B, tit. *Fire*) it is said: 'If my fire by misfortune burns the goods of another man, he shall have his action on the case against me. If a fire breaks out suddenly in my house, I not knowing it, and it burns my goods and also my neighbor's house, he shall have his action on the case against me. So, if the fire is caused by a servant or a guest, or any person who entered the house with my consent. But otherwise, if it is caused by a stranger who entered the house against my will.'" "There is no force in the suggestion that the statute under consideration unjustly selects only railroad corporations to bear the burden of an extraordinary risk. It is confined to them, because they alone have the privilege of taking a narrow strip of land from each owner, without his consent, along the route selected for the track, and of traversing the same at all hours of the day and night, and at all seasons whether wet or dry, with locomotive engines that scatter fire along the margin of the land not taken, thereby subjecting all combustible property to extraordinary hazard of loss, and that too for the sole profit of the corporation." 54 Conn. 461, 462.

In Iowa, before the passage of any statute making railroad corporations responsible for damage done by sparks from their locomotive engines, it was held that no action could be main-

tained for such damage, without proof of negligence on their part. *Gandy* v. *Chicago & Northwestern Railroad*, 30 Iowa, 420. The legislature then passed a statute providing that "any corporation operating a railway shall be liable for all damages by fire that is set out or caused by the operating of any such railway." Iowa Code of 1873, § 1289. The Supreme Court of the State, assuming this statute to impose a liability independent of negligence, held it to be constitutional, and applicable to companies incorporated under general laws before its passage; and said: "The statute simply recognizes the doctrine that the use of the locomotive engine is the employment of a dangerous force; that sometimes, notwithstanding the exercise of the highest care and diligence, it will emit sparks and cause destructive conflagrations; that when this occurs loss must fall upon one of two innocent parties; that heretofore that loss has been borne by the owner of the property injured; hereafter it shall be borne by the owner of the property causing the injury." "What the policy of this legislation may be, experience alone can show. It may be that it will prove to be unreasonably severe, and to stand in the way of material progress and the best interests of the country at large. It may, upon the other hand, promote a high degree of skill and care, and stimulate the invention and use of improved appliances, lessening the danger of fires, and greatly increasing the safety of property, without any detriment to public interests. With these questions we have nothing to do. For us it is enough to know that the statute contravenes no constitutional provision, state or national; and that it does not do so we entertain no doubt." *Rodemacher* v. *Milwaukee & St. Paul Railroad*, 41 Iowa, 297, 309. The subsequent decision, by a majority of the same court, cited by the plaintiff in error, that this statute only made the fact of an injury so occurring *prima facie* evidence of negligence, was based wholly upon a peculiar construction of this section in connection with other provisions of the code, and in no degree upon any suggestion that, regarded as imposing an absolute liability, it would be unconstitutional. *Small* v. *Chicago, Rock Island & Pacific Railroad*, 50 Iowa, 338.

In a recent case in the Circuit Court of the United States for the Northern District of Iowa, Judge Shiras said: "The right to use the agencies of fire and steam in the movement of railway trains in Iowa is derived from the legislation of the State; and it certainly cannot be denied that it is for the State to determine what safeguards must be used to prevent the escape of fire, and to define the extent of the liability for fires resulting from the operation of trains by means of steam locomotives. This is a matter within state control. The legislation of the State determines the width of the right of way used by the companies. The State may require the companies to keep the right of way free from combustible material. It may require the depot and other buildings used by the company to be of stone, brick or other like material, when built in cities or in close proximity to other buildings. The State, by legislation, may establish the extent of the liability of railway companies for damages resulting from fires caused in the operation of the roads." *Hartford Ins. Co.* v. *Chicago, Milwaukee & St. Paul Railway Co.*, 62 Fed. Rep. 904, 907.

In Missouri, a statute was enacted in 1853, requiring railroad corporations, whether already existing or thereafter formed under the laws of the State, to erect and maintain fences on the sides of their railroads, where they passed through enclosed fields, with openings or gates or bars at farm crossings, and also cattle-guards at all road crossings, suitable and sufficient to prevent cattle, horses or other animals from getting upon the railroads; and, until such fences and cattle-guards were duly made, making the corporation liable for all damages done by its agents or engines to animals on the railroad. Missouri Stat. February 24, 1853, §§ 51, 56, Laws of 1853, pp. 143, 144. The Supreme Court of the State, following the opinion of Chief Justice Redfield in the leading case of *Thorpe* v. *Rutland & Burlington Railroad*, 27 Vermont, 140, and referring to *Lyman* v. *Boston & Worcester Railroad*, 4 Cush. 288, above stated, held the statute constitutional as applied to companies incorporated under general laws before its passage; and Mr. Justice Scott, in delivering

judgment, said : " Where such dangerous and powerful agents as steam engines are brought into use, there should be a power in the legislature to prescribe such reasonable regulations as will prevent injuries resulting from their employment. The foresight of man is not competent to the task of prescribing in a charter all the regulations which time may show to be necessary for the security of the interests of the people of the State against injuries caused by the introduction of new, powerful and dangerous agents for carrying on her intercourse and commerce. The charter must be taken subject to the understanding that, in its operation affecting the interests of society, it will be, like individuals, liable to be controlled by such reasonable enactments as may be dictated by a sense of what is required for the preservation of the persons, lives and property of the people, such enactments not contravening the expressed or plainly implied provisions of the charter." *Gorman* v. *Pacific Railroad,* 26 Missouri, 441, 450, 451. That statute was afterwards reënacted, modified by including unenclosed lands as well as enclosed or cultivated fields, and by making the corporation liable in double the amount of damages to cattle, horses or other animals, occasioned by failure to construct or maintain such fences or cattle-guards. Missouri Gen. Stat. of 1865, c. 63, § 43; 1 Wagner's Stat. c. 37, art. 2, § 43; Stat. February 18, 1875, Laws of 1875, p. 131; Rev. Stat. of 1889, § 2611. And the statute, as so modified, and as applied to existing railroad corporations, was held to be valid by a decision of that court, affirmed by this court. *Humes* v. *Missouri Pacific Railway,* 82 Missouri, 221, and 115 U. S. 512.

In Missouri, before the passage of any statute concerning the liability of railroad corporations for fire communicated from their engines, they were held not to be liable, unless negligent; but the fact of fire escaping from a passing engine and burning property of another was held to be *prima facie* evidence of negligence, and to throw upon the defendant the burden of proving that it supplied the best mechanical contrivances to prevent the fire from escaping, and that there was no negligence on the part of its servants. *Fitch* v. *Pa-*

*cific Railroad,* 45 Missouri, 322; *Miller* v. *St. Louis, Iron Mountain & Southern Railroad,* 90 Missouri, 389. The statute of March 31, 1887, now in question, (reënacted in section 2615 of the Revised Statutes of 1889,) changed the rule, by making the railroad corporation absolutely responsible in damages to the owners of property "injured or destroyed by fire communicated, directly or indirectly, by locomotive engines" in use upon its railroad; and providing that it should have an insurable interest in property along its route, and might procure insurance thereon in its own behalf, for its protection against such damages. The constitutionality of this statute was upheld by the Supreme Court of the State in full and able opinions in the case at bar, and in a similar case decided at the same time, and now argued with it in this court. *Mathews* v. *St. Louis & San Francisco Railway,* 121 Missouri, 298; *Campbell* v. *Missouri Pacific Railway,* 121 Missouri, 340. In discussing the subject, the court said: "If the State is powerless to protect its citizens from the ravages of fires set out by agencies created by itself, then it fails to meet one of the essentials of a good government. Certainly, it fails in the protection of property. The argument of the defendant, reduced to its last analysis, is this: 'The State authorized the railroad companies to propel cars by steam. To generate steam, they are compelled to use fire. Therefore, they can *lawfully use* fire, and as they are pursuing a lawful business, they are only liable for negligence in its operation; and when, in a given case, they can demonstrate they are guilty of no negligence, then they cannot be made liable.' To this the citizen answers: 'I also own my land lawfully. I have the right to grow my crops and erect buildings on it, at any place I choose. I did not set in motion any dangerous machinery. You say you are guiltless of negligence. It results, then, that the State, which owes me protection to my property from others, has chartered an agency which, be it ever so careful and cautious and prudent, inevitably destroys my property, and yet denies me all redress. The State has no right to take or damage my property without just compensation.' But what the State cannot do directly, it attempts

to do indirectly, through the ·charters granted to railroads, if
defendant's contention be true. When it was demonstrated
that, although the railroads exercised every precaution in the
construction of their engines, the choice of their operatives,
and clearing their rights of way of all combustibles, *still* fire
was emitted from their engines, and the citizen's property
burned, notwithstanding his efforts to extinguish it, and not-
withstanding he had in no way contributed to setting it out,
it is perfectly competent for the State to require the company
who set out the fire to pay his damages." "The organic law
of the State prescribed, before defendant obtained its charter,
that '.the exercise of the police power of the State shall never
be abridged, or so construed as to permit corporations to con-
duct their business in such manner as to infringe the equal
rights of individuals, or the general well being of the State.'
Constitution of Missouri, art. 12, sec. 5. Let it be conceded,
for it is true, that prior to the enactment of section 2615, by
the decisions of this and other courts, defendant was only
liable for negligence in setting out fire; is it to be concluded
that the legislature is powerless to enact laws which will give
ample protection to citizens against fires? Most certainly not.
Fire, as one of the most dangerous elements, has ever been
the subject of legislative control. It ought not to excite sur-
prise among a people, the great body of whose laws had their
·origin in England, that those who set out fires which destroy
·the property of others should be held absolutely responsible
for them. Such was the ancient common law, before any
statutes were enacted"—quoting Rolle's Abridgment, before
cited. "Under ordinary circumstances, this was ·thought to
be a harsh rule, and it was not generally adopted by the courts
of the several States; ·but the question we are discussing is
not what the courts have generally regarded as the reasonable.
rule, but what is the power of the lawmaking power to adopt
as a correct.one." 121 Missouri, 315–317.

Similar statutes have also been enacted, and held to be con-
stitutional, in Colorado, and in South Carolina. Colorado
Territorial Stat. January 13, 1874, § 3, Laws of 1874, p. 225;
Gen. Laws of 1877, art. 2237, § 3; Gen. Stat. of 1883, §§ 1037,

2798; *Union Pacific Railway* v. *De Busk*, 12 Colorado, 294; South Carolina Gen. Stat. of 1882, § 1511; *McCandless* v. *Richmond & Danville Railroad*, 38 So. Car. 103.

In *Milwaukee & St. Paul Railway* v. *Kellogg*, 94 U. S. 469, in *Northern Pacific Railroad* v. *Lewis*, 162 U. S. 366, and in *Eddy* v. *Lafayette*, 163 U. S. 456, in which it was assumed that negligence on the part of the defendant must be proved, the action was at common law, unaffected by any statute. And the statutes of some States make negligence an essential element in the liability of a railroad company for injuries by fire from its engines. 1 Thompson on Negligence, 171.

The statute of Alabama of February 3, 1877, c. 39, which was held to be unconstitutional in *Zeigler* v. *South & North Alabama Railroad*, 58 Alabama, 594, cited by the plaintiff in error, was one providing that all corporations or persons, "owning or controlling any railroad in this State, shall be liable for all damages to live stock or cattle of any kind, caused by locomotives or railroad cars." Whatever may be thought of the correctness of that decision, no question of liability for fire was before the court, nor was any reference made to the statutes or decisions of other States upon this subject.

In each of the cases in Arkansas, cited by the plaintiff in error, the decision was that a statute of the State providing generally that, "all railroads, which are now or may be hereafter built and operated, in whole or in part, in this State, shall be responsible for all damages to persons and property done or caused by the running of trains in this State," was not intended by the legislature to make the railroad company responsible for all damages, without regard to negligence, but only to shift the burden of proof upon the defendant. Arkansas Stat. February 3, 1875, Mansfield's Digest, § 5537; *Little Rock & Fort Scott Railway* v. *Payne*, 33 Arkansas, 816; *Tilley* v. *St. Louis & San Francisco Railway*, 49 Arkansas, 535. The court, in the first of those cases, while expressing an opinion that "it was not within the province of the legislature to divest rights by prescribing to the courts what should be conclusive evidence," impliedly admitted, or at least cautiously abstained from denying, the validity of statutes like that now

in question, by saying : " In Massachusetts, by statute, rail-road companies are made absolutely liable for injuries by fire communicated from their engines; but, in compensation, are given an insurable interest in any buildings along the route. The courts have sustained this law, but the nature of it is peculiar and exceptional, and the language too clear to admit of doubt." 33 Arkansas, 820.

The learning and diligence of counsel have failed to discover an instance in which a statute, making railroad companies absolutely liable for damages by fire communicated from their locomotive engines to the property of others, has been adjudged to be unconstitutional, as to companies incorporated before or since its enactment.

This review of the authorities leads to the following conclusions :

First. The law of England, from the earliest times, held any one lighting a fire upon his own premises to the strictest accountability for damages caused by its spreading to the property of others.

Second. The earliest statute which declared railroad corporations to be absolutely responsible, independently of negligence, for damages by fire communicated from their locomotive engines to property of others, was passed in Massachusetts in 1840, soon after such engines had become common.

Third. In England, at the time of the passage of that statute, it was undetermined whether a railroad corporation, without negligence, was liable to a civil action, as at common law, for damages to property of others by fire from its locomotive engines; and the result that it was not so liable was subsequently reached after some conflict of judicial opinion, and only when the acts of Parliament had expressly authorized the corporation to use locomotive engines upon its railroad, and had not declared it to be responsible for such damages.

Fourth. From the time of the passage of the Massachusetts statute of 1840 to the present time, a period of more than half a century, the validity of that and similar statutes has been constantly upheld in the courts of every State of the Union in which the question has arisen.

In this court, the constitutionality of such a statute has never been directly drawn into judgment. But it appears to have been assumed in *Grand Trunk Railway* v. *Richardson*, 91 U. S. 454, 472, already cited; and it rests upon principles often affirmed here.

As was said by Chief Justice Shaw, "It is a settled principle, growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community." *Commonwealth* v. *Alger*, 7 Cush. 53, 84, 85. This court has often recognized and affirmed the fundamental principle so declared; and has more than once said: "Rights and privileges arising from contracts with a State are subject to regulations for the protection of the public health, the public morals, and the public safety, in the same sense as are all contracts and all property, whether owned by natural persons or corporations." *Slaughter-house Cases*, 16 Wall. 36, 62; *Patterson* v. *Kentucky*, 97 U. S. 501, 505; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 672; *New Orleans Waterworks* v. *Rivers*, 115 U. S. 674, 682; *Mugler* v. *Kansas*, 123 U. S. 623, 665; *Sweet* v. *Rechel*, 159 U. S. 380, 398.

In *Beer Co.* v. *Massachusetts*, 97 U. S. 25, 33, in which a statute of Massachusetts, prohibiting the manufacture and sale of intoxicating liquors, including malt liquors, was held to be constitutional and valid, as applied to a corporation chartered long before by the State for the purpose of manufacturing malt liquors, this court, speaking by Mr. Justice Bradley, said: "Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health and property of the citizens, and to the preservation of good order and the public morals. The legislature cannot by any contract divest itself of the power to provide for these objects. They belong emphatically to that class of

objects which demand the application of the maxim, *salus populi suprema lex;* and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion can no more be bargained away than the power itself."

In *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512, already mentioned, in which a statute of Missouri, making railroad corporations, not fencing their railroads, liable in double damages for injuries thereby occasioned to cattle and other animals, was held constitutional as applied to corporations existing before its enactment, this court, speaking by Mr. Justice Field, said: "If the laws enacted by a State be within the legitimate sphere of legislative power, and their enforcement be attended with the observance of those general rules which our system of jurisprudence prescribes for the security of private rights, the harshness, injustice and oppressive character of such laws will not invalidate them as affecting life, liberty or property without due process of law." "The law of Missouri, in requiring railroad corporations to erect fences where their roads pass through, along or adjoining enclosed or cultivated fields or unenclosed lands, with openings or gates at farm crossings, and to construct and maintain cattle-guards, where fences are required, sufficient to keep horses, cattle and other animals from going on the roads, imposes a duty in the performance of which the public is largely interested. Authority for exacting it is found in the general police power of the State to provide against accidents to life and property in any business or employment, whether under the charge of private persons or of corporations." "In few instances could the power be more wisely or beneficently exercised than in compelling railroad corporations to enclose their roads with fences having gates at crossings, and cattle-guards. The speed and momentum of the locomotive render such protection against accident in thickly settled portions of the country absolutely essential." 115 U. S. 520, 522.

"The objection that the statute of Missouri violates the clause of the Fourteenth Amendment, which prohibits a State to deny to any person within its jurisdiction the equal protec-

tion of the laws, is as untenable as that which we have considered. The statute makes no discrimination against any railroad company in its requirements. Each company is subject to the same liability, and from each the same security, by the erection of fences, gates and cattle-guards, is exacted, when its road passes through, along or adjoining enclosed or cultivated fields or unenclosed lands. There is no evasion of the rule of equality, where all companies are subjected to the same duties and liabilities under similar circumstances." 115 U. S. 523.

Like decisions, for like reasons, were made in the similar cases of *Minneapolis & St. Louis Railway* v. *Beckwith*, 129 U. S. 26, and *Same* v. *Emmons*, 149 U. S. 364, in which last case this court, again speaking by Mr. Justice Field, said: "The extent of the obligations and duties required of railway corporations or companies by their charters does not create any limitation upon the State against imposing all such further duties as may be deemed essential or important for the safety of the public, the security of passengers and employés, or the protection of the property of adjoining owners. The imposing of proper penalties for the enforcement of such additional duties is unquestionably within the police powers of the States. No contract with any person, individual or corporate, can impose restrictions upon the power of the States in this respect." 149 U. S. 367, 368.

In *Missouri Pacific Railway* v. *Mackey*, 127 U. S. 205, the judgment of the Supreme Court of Kansas in 33 Kansas, 298, maintaining the constitutionality of a statute of the State, imposing for the future upon every railroad corporation, organized or doing business in the State, a liability, to which no person or corporation was before subject, for all damages done to any of its employés by negligence or mismanagement of their fellow-servants, was affirmed by this court, saying: "The hazardous character of the business of operating a railway would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employés, as well as the safety of the public. The business of other corporations is not subject to similar

dangers to their employés ; and no objections, therefore, can be made to the legislation on the ground of its making an unjust discrimination. It meets a particular necessity, and all railroad corporations are, without distinction, made subject to the same liabilities. As said by the court below, it is simply a question of legislative discretion whether the same liabilities shall be applied to carriers by canal and stage coaches, and to persons and corporations using steam in manufactories." 127 U. S. 210.

The motives which have induced, and the reasons which justify, the legislation now in question, may be summed up thus : Fire, while necessary for many uses of civilized man, is a dangerous, volatile and destructive element, which often escapes in the form of sparks, capable of being wafted afar through the air, and of destroying any combustible property on which they fall; and which, when it has once gained headway, can hardly be arrested or controlled. Railroad corporations, in order the better to carry out the public object of their creation, the sure and prompt transportation of passengers and goods, have been authorized by statute to use locomotive engines propelled by steam generated by fires lighted upon those engines. It is within the authority of the legislature to make adequate provision for protecting the property of others against loss or injury by sparks from such engines. The right of the citizen not to have his property burned without compensation is no less to be regarded than the right of the corporation to set it on fire. To require the utmost care and diligence of the railroad corporations in taking precautions against the escape of fire from their engines might not afford sufficient protection to the owners of property in the neighborhood of the railroads. When both parties are equally faultless, the legislature may properly consider it to be just that the duty of insuring private property against loss or injury caused by the use of dangerous instruments should rest upon the railroad company, which employs the instruments and creates the peril for its own profit, rather than upon the owner of the property, who has no control over or interest in those instruments. The very statute, now in

question, which makes the railroad company liable in damages for property so destroyed, gives it, for its protection against such damages, an insurable interest in the property in danger of destruction, and the right to obtain insurance thereon in its own behalf; and it may obtain insurance upon all such property generally, without specifying any particular property. *Eastern Railroad* v. *Relief Ins. Co.*, 98 Mass. 420. The statute is not a penal one, imposing punishment for a violation of law; but it is purely remedial, making the party, doing a lawful act for its own profit, liable in damages to the innocent party injured thereby, and giving to that party the whole damages, measured by the injury suffered. *Grand Trunk Railway* v. *Richardson*, 91 U. S. 454, 472; *Huntington* v. *Attrill*, 146 U. S. 657.

The statute is a constitutional and valid exercise of the legislative power of the State, and applies to all railroad corporations alike. Consequently, it neither violates any contract between the State and the railroad company, nor deprives the company of its property without due process of law, nor yet denies to it the equal protection of the laws.

*Judgment affirmed.*