CATHERINE C. MARTIN, ADMINISTRATRIX, vs. THE NEW YORK & NEW ENGLAND RAILROAD COMPANY.
CATHERINE C. MARTIN vs. THE SAME.

Hartford Dist., Oct. T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and PRENTICE, Js.

It is provided by Gen. Statutes, § 3581, that " when any injury is done to a building or other property of any person by a fire communicated by a locomotive engine of any railroad company, without contributory negligence on the part of the person entitled to the care and possession of the property injured, the railroad company shall be held responsible in damages to the extent of such injury to the person injured." A railroad station was set on fire by sparks from a locomotive of the railroad company, and heat and sparks from the burning building set fire to the plaintiff's property near by and it was destroyed. Held that the railroad company was liable.

The liability of a railroad company in such a case is a statutory liability, and does not depend on the existence of negligence.

Where fire is communicated to property by a locomotive, and extends beyond to other property without the aid of any other intervening cause, the injury to each person is equally the result of the act which started the fire. An injury which can be directly traced to the first fire cannot be regarded as too remote.

The statute speaks of injuries "to a building or other property." Held to include personal property as well as real.

The statute is a remedial one in the best sense, and should be so construed as to suppress the mischief and advance the remedy.

The plaintiff testified that a building burned was worth $3,500. It had been put into her tax list by her husband as her agent at a valuation of $800. Held that this tax list was not admissible in evidence against her to show that the building was worth less than $3,500, nor to contradict her testimony.

Her husband was her agent only in making a list of her property for tax-

ation, and was not such in putting a valuation upon it, which he was not required by law to do.

The valuation of property by assessors is solely for the purpose of determining the amount it shall pay as taxes. It would not be admissible in a suit between other parties to prove the actual value of the property.

The complaint alleged that the fire was communicated to the plaintiff's property by a locomotive engine of the defendant, and that the property was destroyed by the fire. The defendant suffered a default and the case was heard in damages. Held that the plaintiff was *prima facie* entitled to recover her actual loss from the fire to the full extent proved, but that the defendant, to reduce the damages to a nominal sum, might show that the fire was not communicated by its locomotive.

[Argued October 4th—decided November 1st, 1892.]

Two ACTIONS to recover for the destruction of property by a fire communicated to it by a locomotive engine of the defendant railroad company; brought to the Superior Court in Windham County, and heard in damages upon a default by *Thayer, J.* Facts found and full damages assessed in both cases, and appeals by the defendant. The cases were argued together in this court.

*S. E. Baldwin* and *M. A. Shumway*, for the appellant.

1. The law under which the plaintiff seeks to recover, Gen. Statutes, § 3581, has been the law in this state since 1881. It imposes upon the railroads responsibility for damages which are not the consequence of any negligence on their part, and renders them liable for losses that may result from causes arising in the exercise of the highest care, or from unavoidable accident in conducting a business of inestimable benefit to every community. In determining the extent of this liability the court may, with propriety and justice, not only insist, as in any case, that everything necessary to fix the liability upon the defendant should plainly appear, but should construe the law with great strictness in favor of the defendant.

2. The first reason of appeal assigned relates to practice in our courts. The default did not admit that the fire was communicated by the defendant's locomotive and the plaintiff was bound to prove that fact. An examination of our

decisions fails to show that the question here raised has been adjudicated, and in a number of cases there are *dicta* which sustain the claim made by the defendant. *Sherwood* v. *Haight*, 26 Conn., 432; *Havens* v. *Hartford & N. Haven R. R. Co.*, 28 id., 69; *Lamphear* v. *Buckingham*, 33 id., 250; *Rose* v. *Gallup*, id., 338; *Batchelder* v. *Bartholomew*, 44 id., 501; *Dexter* v. *Whitbeck*, 46 id., 224; *Crane* v. *Eastern Transportation Line*, 48 id., 361; *Crogan* v. *Schiele*, 53 id., 186. In none of these cases has there been a *dictum* that the extent of the damage, and the kind and character of the damage alleged, were not wholly upon the plaintiff to prove after a default. There can be no doubt that the damage must follow and result from the allegations, at least so far as the allegations describe the nature and extent of the damages. In this case the damage is not simply damage by fire, but damage by fire communicated by a locomotive. The origin of the fire becomes an essential and inseparable part of the damages, and no kind of damages can be proven or recovered, except the kind mentioned in the statute fixing the responsibility. This section of the statutes must be construed in connection with the other statute on the same subject, § 1096. The right of recovery depends on our negligence, of which that section makes proof of a certain fact *primâ facie* evidence, and then § 3581 gives a new statutory force to the act of negligence so proved. But the peculiar and double statutory effect of the fact in question makes it the more necessary to prove that fact on the part of the plaintiff.

3. The finding shows that the fire which destroyed the plaintiff's property, was communicated to it from the burning station on the defendant's land. There is a distinction between a fire which originates upon the defendant's own property and therefrom is communicated to property beyond, and one which originates beyond the limits of the defendant's property and therefrom is communicated to other property still more remote. In *Simmonds* v. *N. York & N. England R. R. Co.*, 52 Conn., 264, the fire caused damage by spreading upon the adjoining property, and the courts

have found that, where fire was communicated by heat alone, the second fire was not of the same origin as the first; and, equally, a fire started upon the defendant's property and communicated to other property outside, not by spreading on the ground continuously, but by the action of wind or other cause with no negligence, should not bring the case within the statutory liability. Whether, if there had been negligence in fact, the defendant as a wrong-doer could be held to have contemplated that burning its depot would communicate fire to the plaintiff's building, is not the question here. There would be strong authorities in our favor in that case. But the plaintiff here seeks to recover under a statute, and does not charge negligence. The statute gives a remedy when the fire was set directly by a locomotive, but it gives no remedy in any other case. *Pennsylvania R. R. Co.* v. *Kerr*, 62 Penn. St., 353; *Ryan* v. *N. York Central R. R. Co.*, 35 N. York, 210; *Toledo, Wabash & Western R. R. Co.* v. *Muthersbaugh*, 71 Ill., 572; *Pennsylvania Co.* v. *Whitlock*, 99 Ind., 16. On this default the plaintiff could recover only upon her allegations. These were that her property was destroyed by fire communicated to it by our engine. The facts found are that the engine communicated fire to our depot, and that the heat, fire and sparks from the depot set fire to the plaintiff's property situated fifty feet away. This proof departed from the allegations. Had the fire spread along the ground, so as to be one continuous fire as in the *Simmonds* case, it would have been one and the same fire from the beginning to the end. But in fact there were two separate and detached fires, having no immediate physical connection. One was in a sense the cause of the other, (though a remote one,) but the second was not a fire set by an engine, as alleged. *Shepard* v. *N. Haven & Northampton Co.*, 45 Conn., 54, 58. Under the appellee's contention the defendant would have been liable, on its default, for a fire communicated by sparks or cinders from the burning depot, blown half a mile away, to some distant building. Claims so inconsistent with the rule of *secundum allegata* are inappropriate in an action on

a statute imposing a peculiar and heavy liability in deroga-
tion of the common law.

4. The statute upon which this action is founded has de-
fined the kind of property for the destruction of which the
plaintiff may recover, as "buildings or other property."
We deny that the words "other property" include the
goods which the plaintiff describes in her complaint and
which were destroyed by fire. The words "other property,"
under the rule of *ejusdem generis*, must be held to refer only
to real property other than buildings, such as fences, bridges,
dry-docks, marine railways, drying frames, platforms, plat-
form scales, etc. *State* v. *Barr*, 39 Conn., 40, 43, 44; *Chap-
man* v. *Atlantic & St. Lawrence R. R. Co.*, 37 Maine., 92;
*Regina ex rel. Waterman Co.* v. *Reed*, 28 Eng. Law & Eq.,
133. The defendant could have had no knowledge of the
nature or value of the goods stored in the plaintiff's building
nor means of acquiring such knowledge, and consequently
no knowledge of the extent of its liability or of the extent
of risk it assumed in running a locomotive in its vicinity.
The most costly merchandise or the most dangerous and in-
flammable materials without the knowledge of the defend-
ant may be deposited along its line of road, and a spark
of fire destroy it all. Could the legislature have intended
to give the defendant an insurable interest in property as
to which it had and could have no knowledge that it ex-
isted?

5. The finding further shows that a portion of the property
destroyed had been purchased by Elliott, a nephew of the
plaintiff, in his own name and presumably upon his own
credit. The title to these goods had certainly vested in
him, whether he in fact did or did not buy on an undisclosed
trust for the plaintiff, and for these the plaintiff could not
recover. But the damages assessed are entire, with no dis-
crimination between what he owned and what she owned.
If there are any of the goods which were not hers, she can-
not retain a judgment under this statute for a gross sum
which includes their value.

6. In Mrs. Martin's suit in her own right against the same

defendant, the tax list offered by us, showing the value placed by her husband, as her agent, upon her property, was improperly excluded. This act of his was the strongest possible declaration by him in the plaintiff's behalf of the value of the property. It was deliberately made for the information of public officers, and it was a declaration on a subject on which she was bound by law to speak, either personally or by an agent. Knowledge of the act of her husband, as her agent, is imputed to the plaintiff by the fact that she benefited thereby, and that she knew he was accustomed to render such lists for her every year, and knew that a tax list had been rendered for her in 1890. His act became hers. But a *scienter* here is unimportant. He made the declaration in the course of his agency. He was her agent to declare this very thing. *Norwich & Worcester R. R. Co.* v. *Cahill*, 18 Conn., 492. The evidence was material, as tending to show that the plaintiff had placed, or authorized to be placed, a different valuation upon the property from that which was now sworn to by her. We also claim it as showing, as against her, the actual value of the property as assessed with her consent for the purposes of taxation. The assessors' office was the natural place for the defendant to go for information as to the insurable value of the buildings along its line, and it would have a right to rely on the sworn valuation of the owner as the limit of its liability. The question is not whether her valuation of $800 was conclusive in this action, but whether it was admissible in view of her testimony to a different valuation.

*A. P. Hyde* and *C. E. Searls*, for the appellee.

CARPENTER, J. This is an action on the statute, Gen. Statutes, § 3581, to recover the value of property destroyed by fire. The defendant suffered a default and was heard on the question of damages. The court rendered judgment for the plaintiff for substantial damages, and the defendant appealed.

The first error assigned is as follows :—" The court erred

in not holding and ruling that, upon a hearing in damages after a default, the burden was upon the plaintiff to prove that the fire was communicated to the property by a locomotive to entitle her to recover more than nominal damages."

The sole cause of action stated in the complaint is as follows:—" 5. On said day and without contributory negligence on the part of the plaintiff, a fire was communicated to said property by a locomotive engine owned and operated by the defendant, whereby said property was consumed and destroyed."

The statute on which the action is brought is as follows: —" When any injury is done to a building or other property of any person, by a fire communicated by a locomotive engine of any railroad company, without contributory negligence on the part of the person entitled to the care and possession of the property injured, the railroad company shall be held responsible in damages to the extent of such injury to the person injured; and every railroad company shall have an insurable interest in the property for which it may be so held responsible in damages along its route, and may procure insurance thereon in its own behalf."

The cause of action as alleged is admitted by the default. The cause of action is simply that the defendant's locomotive communicated fire to the plaintiff's property and destroyed it. If that is not admitted nothing is, and the plaintiff cannot recover at all; but the defendant does not claim that. There is no error in this ruling.*

The second error assigned is that "the court erred in holding and ruling, from the facts found, that the fire was

---

* As the opinion does not state the exact ruling of the court below upon the point in question, it is here given. The finding states it as follows:—

"The defendant claimed that to entitle the plaintiff to recover more than nominal damages upon the default the burden was upon her to prove that the fire was communicated to her building by a locomotive of the defendant. The court did not so rule, but held that the plaintiff was *prima facie* entitled on the default to recover damages to the full extent proved to have been sustained by her from the fire, and that the defendant to reduce the damages to nominal might show that the fire was not communicated by its locomotive." R.

communicated to the plaintiff's property by a locomotive, inasmuch as the finding shows that the fire was communicated to the plaintiff's property by the fire, heat and sparks from the burning station on the land of the defendant."

In substance it is claimed that this statute is somewhat harsh and arbitrary, imposing a liability where the common law imposes none, a liabilty that cannot be avoided by any degree of care, and therefore that it should be strictly construed, and not extended to cases not within its letter ; that when it says that the railroad company shall be liable for property destroyed by fire communicated to it by its locomotive, it cannot be held to embrace property destroyed by fire communicated to it by the burning of other property, although such other property may have been set on fire by the locomotive.

There are two views that may be taken of this statute. The first is that suggested by the defendant's counsel, rather than distinctly claimed, that it is to be construed in connection with section 1096, which provides that in actions to recover for any injury occasioned .by fire communicated by any locomotive, the fact that the fire was so communicated shall be *primâ facie* evidence of negligence, and therefore that negligence is the ground of recovery under this statute. On that basis the defense cites two cases, *Pennsylvania R. R. Co.* v. *Ker*, 62 Penn. St., 353, and *Ryan* v. *N. York Central R. R. Co.*, 35 N. York, 210, both of which seem to hold that the negligence cannot pass over the burning of the station to the burning of the plaintiff's property; in other words that the injury to the plaintiff is not the proximate effect of the negligence, but is .too remote. Both these cases are criticised by text writers as being too narrow and not giving a correct view of the law as it exists elsewhere. Each in its own jurisdiction has been qualified and explained by later cases, so as .to .take from its weight as an authority. *Oil Creek & Allegheny R. R. Co.* v. *Keighron*, 74 Penn. St., 316 ; *Penn. R. R. Co.* v. *Hope*, 80 id., 373 ; *Webb* v. *Rome etc., R. R. Co.*, 49 N. York, 420 ; *Pollett* v. *Long*, 56 id., 200. In *Penn. R. R. Co.* v. *Whitlock*, 99 Ind., 16,

and in *Dillman* v. *Indianapolis etc.*, *R. R. Co.*, 76 Ind., 166, the cases of *Penn. R. R. Co.* v. *Ker*, and *Ryan* v. *N. York Central R. R. Co.*, are disapproved.

The authority of those cases is so much shaken that we are not inclined to follow them, but to adhere to the rule adopted in this state in *Simmonds* v. *New York & New England R. R. Co.*, 52 Conn., 264, that when the fire is continuous, reaching the property of the different owners without the aid of any other intervening cause, the injury to each person is equally the result of the negligence which started the fire; in other words, where the injury to each successive property is directly traceable to the first fire, it results from the negligence, and cannot be regarded as too remote, but is direct and proximate. Applying that rule to this case, we cannot doubt that this point was correctly decided in the court below. The heat, flames and sparks from the burning station were directly applied to the plaintiff's property and caused its destruction. There is no room for any other intervening agency.

In many of the cases referred to, also in the case of *Milwaukee & St. Paul R. R. Co.* v. *Kellogg*, 94 U. S. R., 469, the question whether the injury is proximate or remote is regarded mainly as a question of fact. In that view of the case also we should be unable to disturb the judgment, for it will be presumed that the court below found as a fact that the injury was direct, and we cannot review that finding.

The other view of the statute is that it eliminates the matter of negligence entirely, and makes the railroad company liable on other grounds. Experience demonstrated that in all cases of fire set by the operation of railroads, it was extremely difficult, and in some cases impossible, to prove negligence even where it existed. That fact led the legislature in 1875 to enact what is now section 1096, making the fact of the fire so communicated *primâ facie* evidence of negligence. Even then the difficulty was but partially removed, for in most cases the defendant could easily prove due care, and the plaintiff would be illy prepared to meet it. So in 1881 the legislature took the broad

equitable ground that upon proof of the fact that the locomotive communicated fire to and destroyed property, the company should be liable irrespective of the question of negligence.

The reasons underlying this legislation are not hard to find. The railroad companies were in possession of great powers and privileges granted by the state. The use of such powers was necessarily attended with danger to property along the line of the road, and fires were of frequent occurrence. The legislature rightly judged that it was hard for individuals to bear all these losses, and that the railroad companies might well be required to make them good. Nor is such a requirement unjust. On the contrary it is substantially right and just. Railroad companies possess extensive powers and valuable franchises, by means of which they are able to collect large sums of money from the public. In using such powers and franchises they necessarily expose private property. They have a license from the public to carry on extensively a dangerous business from which they receive large profits. Why should they not be required to assume the risk rather than individuals?

But in reality the risk is not wholly nor largely on them. They have the means of protecting themselves by insurance. That is a privilege expressly conferred by statute. But more than that, they have the means of indemnifying themselves, to some extent at least, by increased rates for passengers and freight. Presumptively they adjust their tariff of charges in view of this liability. If they do so, the loss falls ultimately upon the public. We are told that railroads are of incalculable benefit to the public. True. And the public is willing to tax itself in this indirect method for the purpose of paying these losses. Why should the railroad companies complain?

In this view of the case the statute rests upon broad grounds of justice and equity. It is designed to do justice where before there was a partial failure of justice. It is therefore a remedial statute in the best sense, and we must

so construe it as to suppress the mischief and advance the remedy.

Now what did the legislature intend? Clearly it was: that when railroad companies destroyed "buildings or other property," they should pay for it. The question that presents itself for solution is, did the company cause the destruction of the plaintiff's property? There can be but one answer to that question. We are not required to be astute to throw the loss upon the plaintiff upon a technicality.

The third reason of appeal is that the court erred in admitting evidence to prove the loss of personal property, etc. The claim is that under the rule of *ejusdem generis*, the phrase in the statute, "or other property," can only embrace property of the same kind as buildings, that is, real estate. We do not think that the rule applies, unless we can gather from the language used in connection with the subject matter that such was the intention of the legislature. The language is certainly broad enough to include personal property, and if it is to be gathered from the reason of the act and the object the legislature had in view, that such was the intention, we must give effect to it. We entertain no doubt that the legislature intended to include personal property. The object was to compel railroads to make good the loss to others sustained by fire occasioned by locomotive engines. Personal property is as much within the reason of the act as buildings. The loss is the same whether it is one or the other, and being within the letter we do not feel at liberty to exclude it by the application of a somewhat artificial rule of construction. It is believed that the rule of *ejusdem generis* is only applied to statutes when it is necessary to give effect to the presumed intention of the legislature. There is no call for its application here.

There are other considerations which lead us to the same conclusion. If the effect of the statute is to conclusively impute negligence to the railroad company, then certainly it is liable for personal property. If the statute assumes that the act of the company in causing the destruction of property is in some sense wrongful, so that it is to be treated

as a tort-feasor, or if the liability rests upon equitable prin-
ciples, it would seem to be equally clear that it extends to
personal property. In the case of *Regan* v. *N. York & New
England R. R. Co.*, 60 Conn., 124, a recovery was had under
the statute for the loss of personal property. True, the
question now before us was not then made. The counsel
and the court assumed that the defendant was liable. The
reasoning of the court, that the defendant was primarily
and justly liable for the loss, is inconsistent with the dis-
tinction now contended for. The suggestion as to the
difficulty of insuring personal property is entitled to little
or no weight. The object of that provision was to give
railroad companies the means of securing partial indem-
nity, and not to define the kinds of property for which
they were made liable. Had it been intended to limit the
operation of the statute to real estate, the appropriate lan-
guage to express that intention and to remove all doubt
would have been " buildings and other real estate." As
other language is used we think we ought to give that lan-
guage its ordinary meaning.

The plaintiff's intestate died in the latter part of March.
A store of goods came into her hands as administratrix.
Having obtained authority from the court of probate she
arranged with one Elliott to carry on the business, and re-
place goods sold with new goods of like character, so as to
keep the stock good until the appraisal should be completed
and the same could be disposed of. It was intended by
both parties that after the appraisal was completed Elliott
would purchase the goods and business, but no agreement
of purchase had been made. He conducted the business
under that arrangement until the fire. Goods were sold from
the store, the money was deposited in the bank in his name,
with the money he purchased other goods to replace those
sold, the goods being billed to him, and in this manner the
stock was kept substantially as it was at the death of Mr.
Martin. There had been no settlement between Elliott and
the plaintiff. The defendant claimed, and asked the court
to rule, that the goods purchased as aforesaid by Elliott

were his goods and not the plaintiff's, and that she was not entitled to recover therefor. The court did not so rule. This ruling is assigned as the fourth reason of appeal.

No question of law is here presented. This seems to be an ingenious attempt, by the use of the word "rule," to turn a question of fact upon evidence into a question of law. There may be an implied claim that it is legally impossible for the plaintiff under the circumstances to be the owner of the goods purchased by Elliott. That claim requires no answer.

The questions hitherto considered are common to both cases. The case of Martin against the same railroad company is an action to recover the value of certain buildings belonging to Mrs. Martin, which were destroyed by the same fire.

The plaintiff testified that the value of the buildings destroyed was $3,500. The defendant offered in evidence a copy of the tax list for the year 1890, signed by the plaintiff's husband, Charles F. Martin, agent, and sworn to by him, in which this real estate was entered at a valuation of $800, for the purpose of proving that the value of the property was less than $3,500, and to contradict the plaintiff's testimony. This evidence was objected to and excluded by the court. This ruling is assigned as the fourth reason of appeal.

That the valuation put upon property by the assessors for the purposes of taxation is not admissible in a suit between other parties, for the purpose of proving the actual value of the same property, has been repeatedly decided in Massachusetts. *Brown* v. *Providence, Warren & Bristol R. R. Co.*, 5 Gray, 40; *Flint* v. *Flint*, 6 Allen, 34; *Kenerson* v. *Henry*, 101 Mass., 152. The defendant was neither party nor privy to the tax list. The evidence offered could, under no circumstances, have been used against the railroad company; how then could it be admissible in its favor?

The valuation of property by assessors is solely for the purpose of determining the amount it shall pay as taxes. The evidence offered did not tend to contradict the plaint-

iff. The husband was not her agent to put a valuation upon the property, but simply to give a list of the property. He was required to make oath to the list but not to the valuation.

There is no error in the judgment appealed from.

In this opinion ANDREWS, C. J., and TORRANCE and PRENTICE, Js., concurred; SEYMOUR, J., concurred in the result, but died before the opinion was written.