Williams, J.
The actions below were brought by the respective defendants in error, to recover damages to their property by fire caused, it is alleged, in the operation by the plaintiffs in error of their railroads after April 26,1894.
In the first and last of the cases, the fire that caused the damages sued for, originated on the lands of the railroad company, and was thence communicated directly to the property of the plaintiffs. The court, in each of these cases, declined to instruct the jury that negligence of the company was necessary to a recovery by the plaintiff, and charged that, as the fire originated on the company’s *325 land, the plaintiff might recover the loss he thereby sustained, without proof of negligence on the part of the company, if the fire was caused in its operation of the road.
In the other case the fire, did not originate on the company’s land, but was caused, it is claimed, - by sparks which were blown from an engine passing along the defendant’s road, over onto the plaintiff’s buildings situated on his own land. • The petition contains no charge of negligence; and, a demurrer to it on that ground, was overruled. The court also refused to give in its charge to the jury, instruction hereinafter mentioned which the defendant requested.
In each of the cases damages were recovered, and judgment therefor was affirmed. And, as in the disposition of the cases it becomes necessary to consider and determine like questions concerning the construction and constitutionality of the same statute, they were here argued and submitted together, and may be conveniently included in one report.
The statute in question is entitled: “An act making railroad companies liable for loss or damage by fire in certain cases and prescribing a rule of evidence in certain cases,” and was passed and took effect April 26, 1894 (91 O. L., 187). Its provisions are as follows: “S'ection 1. That every railroad company operating a railroad, or any part of a railroad, wholly or partially within the state of Ohio, shall be liable for all loss or damage by fire originating upon the land belonging to such railroad company, caused by operating such railroad. Such railroad company shall be further liable for all loss or damage by fires originating on lands adjacent to such railroad company’s land, caused in whole or in part by sparks from an engine passing over the line of such railroad, to be recovered before *326 any court of competent jurisdiction within the county in which the lands on which such loss or damage occur are situated, and the existence of such fires upon such railroad company’s lands shall be prima facie evidence that such fire was caused by operating such railroad.
“Section 2. That in all actions against any person or incorporated company for the recovery of damages on account of any injury to any property, whether real or personal, occasioned by fire communicated by any locomotive engine, while upon or passing along any railroad in this state, the fact that such fire was so communicated shall be taken as prima facie evidence to charge with negligence the corporation, or person or persons who shall, at the time of such injury by fire, be in the use and occupation of such railroad, either as owners, lessees or mortgagees, and also those who shall at such time have the care and management of such engine; and it shall not, in any case, be considered as negligence on the part of the owner or occupant of the property injured, that he has used the same in the manner, or permitted the same to be used or remained, had no railroad passed through or near the property so injured, except in cases of injury to personal property, which shall be at the time upon the property occupied by such railroad.
“Section 3. In case either party appeal from the judgment of the court in which an action under this act is originally begun, or may carry the case to a higher court on error, the party in whose favor judgment is finally rendered shall have included in his bill of costs against the adverse party an attoreny fee of fifty dollars ($50) in case the appeal or error is not carried beyond the circuit court, and in case such appeal or error is carried to the supreme court of this *327 state, there shall be an attorney fee of one hundred dollars ($100) included in his said bill of cost.
“Section 4. Section two of this act shall apply to all cases now pending, as well as to those hereafter to be commenced.”
The question upon which counsel differ in the construction of the statute, is whether the liability created by it is absolute, in the sense that negligence of the defendant is unnecessary to a right of action under it. Without attempting a critical analysis of the statute, it is reasonably clear, we think, that it deals with two distinct classes of cases, and prescribes a rule of evidence, and of liability, in each, different from the other. One class embraces all cases where the loss or damage is caused by fire originating on the lands of the company operating the railroad. In cases of that class the company is made liable, when the fire is caused in operating the railroad, though the company be entirely free from negligence; and the existence of the fire on the company’s lands is made prima facie evidence that it was caused in operating the road. The facts essential to a right of action in a case of this kind, are (1) that the plaintiff’s loss resulted from a fire which originated on the land of the defendant company, and (2) that the fire was caused in operating the railroad. But, when the first of these facts is admitted or proved, the last is prima facie established also, and the burden is then upon the defendant to show that the fire was not caused in operating its road. And, while it is unquestionably competent for the defendant to put in issue either or both of these material facts, it is no defense that the company used due care in operating its road, and was otherwise free from negligence. A sufficient reason, if that was necessary, for imposing the rule of absolute liability which renders negligence of the *328 railroad company, or its freedom from negligence immaterial, may be found in the fact that such company, having complete control of its right of way, may readily keep it clear of combustible substances, from which, if allowed to remain, there is, in the operation of the road, constant and imminent danger of fires Avhich others cannot prevent, and against which they may be unable to protect themselves. .
Cases of the other class provided for by the statute, are those where the loss or damage occurs from fire Avhich originates on land adjacent to that of the railroad company, and is caused in Avhole or in part by sparks from an engine passing over the line of railway. Actions of this kind may be maintained against the company or person operating the road either as owner, lessee or mortgagee; and, proof of the fact that the fire which caused the plaintiff’s loss was communicated by an engine while upon or passing along the railroad, it is declared by the statute, “shall be taken as prima facie evidence to charge with negligence the corporation or person or persons who shall, at the time of such injury by fire, be in the use and occupation of such railroad.” This provision of the statute would obviously become inoperative and without a purpose if it should be held that negligence of the defendant, as an element in cases of this kind, is wholly eliminated, and a rule of absolute liability applied which will not permit the absence of negligence to be shown in defense; for, as in all cases, merely prima facie evidence may be overcome by superior proof to the contrary, the plain import of this provision of the statute allows the defendant to disprove. the prima facie case of negligence, by proof of due care. The facts necessary for the plaintiff to establish in the first instance, if they are denied, are (1) that his loss occurred from fire that originated on *329 land adjacent to the land of the railroad company, and (2) that the fire was caused, in whole or in part, by sparks from an engine upon or passing oyer or along the railroad while the defendant was operating it, or was in its use and occupation as owner, lessee or mortgagee. When these facts are not in issue, or are proved, the plaintiff is entitled to recover unless the defendant shows affirmatively that he was without any negligence that proximately contributed to the loss; and, as they make a case for the plaintiff which places the burden on the defendant of proving his freedom from such negligence, a petition which contains those facts is not obnoxious to a general demurrer. Such a petition, though it does not in terms charge the defendant with negligence, states facts which in law make a prima facie case of negligence, and show a complete cause of action. And it would seem to follow that, if the defendant relies on the absence of negligence on his part as a defense, he should plead it by answer.
The statute, so interpreted, is assailed as a violation of both the federal and the state constitution. The specific grounds on which its constitutionality is contested are, that (1) it impairs.the obligation of contracts, (2) it deprives railroad companies of their property without due process of law, (3) it denies them the equal protection of the law, and (4) it has not uniform operation throughout the state.
The validity of legislation of this nature, so far as it was supposed to conflict with the federal constitution, has been recently considered by the Supreme Court of the United States in the case of the St. Louis & San Francisco Railway Co. v. Mathews, 165 U. S., 1, where, in an opinion of great reseacrh, Mr. Justice Gray reviews the history of the law relating to the liability of persons for fire originating on their *330 own premises, and the adjudications on that subject in England and this country, and answers and refutes all of the above mentioned objections, except the last one, to statutes of this character. The grounds on which the exercise of the legislative power in the enactment of such statutes is sustained, as announced in many cases, are concisely stated in the opinion of the learned Justice as follows: “The motives which have induced, and the reasons which justify, the legislation now in question, may be summed up thus: Fire, while necessary for many uses of civilized man,' is a dangerous, volatile and destructive element, which often escapes in the form of sparks, capable of being wafted afar through the air, and of destroying any combustible property on which they fall; and which, when it has once gained headway, can hardly be arrested or controlled. Railroad corporations, in order the better to carry out the public object of their creation, the sure and prompt transportation of passengers and goods, have been authorized by statute to use locomotive engines, propelled by steam generated by fires lighted upon those engines. It is within the authority of the legis-lature to make adequate provision for 'protecting the property of others against loss or injury from sparks from such engines. The right of the citizen not to have his property burned without compensation, is no less to be regarded than the right of the corporation to set it on fire. To require the utmost care and diligence of the railroad corporations in taking precautions against the escape of fire- from their engines might not afford sufficient protection to the owners of property in the neighborhood of the railroads. When both parties are equally faultless, the legislature may properly consider it to be just that the duty of insuring private property against loss or injury, *331 caused by the use of dangerous instruments, should rest upon the railroad company, which employs the implements and creates the peril for its own profit, rather than upon the owner of the property, who has no control over or interest in those instruments.” And he concludes: “The statute is a constitutional and valid exercise of the legislative power of the state, and applies to all railroad corporations alike. Consequently, it neither violates any contract between the state and the railroad company, nor deprives the company of its property without due process of law, nor yet denies to it the equal protection of the laws.”
The application of the principle underlying such legislation is not affected by the fact that it does or does not expressly authorize the railroad company to insure property along the line of its road against fire caused in the operation of the road. Whether provision of that kind shall, or shall not be made, rests in the legislative discretion, and may involve other considerations. In Rodemacher v. Milwaukee & St. Paul Railway, 41 Iowa, 297, a statute which enacted that, “any corporation operating a railway shall be liable for all damages by-fire that is set out or caused by the operating of any such railway,” without any provision authorizing the company to take insurance against loss by such fires, was held constitutional; and that case is approvingly cited, and quotations made from the opinion, by Mr. Justice Gray, in the case referred to in 165 U. S., 1-16, And, in other cases there so cited, no notice is taken of, or importance attached to, the presence or absence of any provision for insurance. In Martin, Admx., v. N. Y. & N. E. R. R. Co., 62 Conn., 331, the court said: “The reasons underlying the legislation are not hard to find. The *332 railroad companies were in possession of great powers and privileges granted by the state. The nse of such powers was necessarily attended with danger to property along the line of the road, and fires were of frequent occurrence. The legislature rightly judged that it was hard for individuals to bear all these losses, and that the railroad companies might well be required to make them good. Nor is such a requirement unjust. On the contrary it is substantially right and just. Railroad companies possess extensive powers and valuable franchises, by means of which they are able to collect large sums of money from the public. In using such powers and franchises they necessarily expose private property. They have a license from the public to carry on extensively dangerous business, from which they receive large profits. AVhy should they not be required to assume the risk rather than individuals?”
In many of the states, and probably a majority of them, statutes have been adopted, not materially different from the one we have before us, so far as the questions under consideration are concerned; and Mr. Justice Gray, in his opinion on page 22, of the case in 165 U. S., says: “The learning and diligence of counsel have failed to discover an instance in which a statute making railroad companies absolutely liable for damages by fire communicated from their locomotive engines to the property of others, has been adjudged to be unconstitutional as to companies incorporated before or since its enactment.”
The contract which it .is claimed is impaired by the statute, is that of the state with the railroad company, arising from the charter granted by the former to the latter. The contention is, that as by its incorporation the company obtained the right to use locomotive engines propelled by steam in the operation of its *333 road, without liability for damages by fires caused thereby except where they resulted from the company’s negligence, there was an implied agreement that the state would impose upon the company no greater burden in that respect, which agreement is impaired and violated by the statute because it imposes a greater liability. And, on the same ground, is based the claim that the statute deprives the company of its property without due process of law, in that, a defense which it might formerly make in actions for such damages is wholly or partially taken away. In the Baltimore & Ohio Company’s case the further claim is made that, as the company’s right of way on which the fire originated that caused the damages for which the plaintiff sued, was obtained by deed, which conveyed the strip of land for all lawful uses of the railroad, one of which was the moving of locomotive engines along and over the road without liability for fires that did not result from its negligence, the statute in creating a liability where there is no negligence on the part of the company, impairs its contract with the grantor in the deed. It does not appear that the conveyance was other than the usual grant of a right of way for railroad purposes, nor that there was any covenant running with the land by which a successor to the title of the grantor in the adjacent land would be bound, nor that there was any special covenant in the deed which would estop the owner of the adjacent land from asserting any right he might otherwise have under the statute; so that, the rights acquired by the deed are not materially different from those obtained by the appropriation of a right of way for a railroad.
It seems clear that this statute does not impair any charter obligation of the state. Since the constitution of 1851, the only charters of railroad or other private *334 corporations, are the general laws of the state which permit their creation, grant their franchises, define their powers, and regulate their conduct; and these laws, under power expressly reserved in the constitution, the general assembly may at any time alter or repeal. Such corporations, therefore, receive their existence, and hold their franchises, subject to the right of the legislative body, in the exercise of its reserved power, to impose upon them such new duties and obligations, conditions and regulations, from time to time, as the public welfare may seem to require. The charter of a corporation is no longer a contract of the state, unalterable without the consent of the corporation. This view of the subject may not be important, since, as was held in Railway Co. v. Mathews, supra, and cases there cited, statutes which impose upon railroad companies an absolute liability where before they were liable only when negligent, are not subject to the objection that they impair the obligation of contracts, though the power to alter or amend the charter of the company by legislation is not reserved in the constitution of the state.
And, such statutes are sustained when applicable to corporations created before, as .well as after their passage, and when the right of way of the company was acquired by deed, as well as when acquired by appropriation. This was held in Lyman v. Boston & Worcester R. R. Co., 4 Cush., 290, where Dewey, J., said: “It is contended, however, that the provisions of this statute do not apply to a case like the present, where the title of the plaintiff is derived from one who has himself, by his deed, granted the land embraced within the location of the railroad, and by the very terms of the grant has conveyed it for the purpose of being thus used for a railroad. The argument is, that the grantor having thus granted *335 a certain definite parcel of land, for the purpose of a railroad, out of a much larger parcel retained by him, the grant is subject to all the consequences necessarily attendant upon such a use of the same, and particularly such as would result from the running of engines, and the exposure of property in his adjacent land to such injury and loss as would naturally result therefrom; and that the railroad corporation, while in the exercise of their appropriate business, are only responsible for ordinary care and diligence in the manner of’ using their road. It is not contended that the statute was not intended to embrace the case of those whose land has been taken under the provisions of the charter of the railroad; but the argument assumes a distinction between those who convey the right to appropriate a portion of their land to the proprietors of a railroad, by deed, and those who do no other act than suffer their land to be taken by such proprietors, under their authority to enter upon and take land for the purpose of their road, paying therefor for such damages as the county commissioners or a jury shall award. We can perceive of no sound distinction between the cases supposed. Each of these modes of acquiring the necessary real estate for the purpose of a railroad is authorized, both by the general laws and by the acts creating railroad corporations. In each, the land owner is supposed to receive full satisfaction for all the injuries necessarily resulting from the use of the same for a railroad. But with the use of locomotive engines, greater hazard to contiguous buildings and property owned by the adjacent land owners may arise, than was originally contemplated, or ought to be left to the ordinary common law remedies. We consider this provision of. the statute of 1840, *336 c. 85, as one of those general remedial acts passed for the more effectual protection of property, against the hazards to which it has become subject by the introduction of the locomotive engine. The right to use the parcel of land appropriated to a railroad does not deprive the legislature of the power to enact such regulations, and impose such liabilities for injuries suffered from the mode of using the road, as the occasion and circumstances may reasonably justify. These provisions in the act referred to are of general import, and equally embrace the cases of those who have by deed granted to a railroad corporation the right to enter upon and use their land, or have given a title to the land itself included within the location, and those other persons whose land has been taken and held merely by the force of the location of the railroad under the charter authority.” This case was approved and followed in Pierce v. Railroad Company, 105 Mass., 199.
Certainly, unless there was some agreement or covenant in the grant of the right of way which would bind a subsequent purchaser from the grantor of the remainder of the land, the enforcement of the statute by such purchaser for damages to his buildings or property caused by fire originating on the right of way, could not amount to the impairment of the company’s contract with the grantor. In the absence of such agreement or covenant, so far as the purchaser is concerned, the company acquired no greater or different right under its grant than if the right of way had been obtained by legal appropriation.
If the statute is otherwise valid, there appears to be no substantial foundation for the claim of counsel that in its enforcement the railroad company is deprived of its property without due process of law, since the remedy it gives must be prosecuted in a court of *337 competent jurisdiction, as actions are usually prosecuted. The plaintiff must file a petition containing a statement of the facts necessary to make a case against the company under the statute, proper process must he served, and the defendant allowed its day in court. It is entitled to plead, have process for witnesses, and to a trial with all the rights incident thereto that parties have in other like cases, including the right to have any judgment recovered against it reviewed in the appellate courts upon the same terms that remedy is allowed to other parties.
The basis of the contention that the statute denies to railroad companies the equal protection of the law is, that it subjects them to a different and more onerous rule of liability than is imposed on other corporations and individuals using steam engines similarly constructed and operated, such as steamboat, manufacturing and other like companies. This proposition has been advanced in many of the reported cases where the validity of such a statute was involved, and has been uniformly held untenable, upon what appears to be a substantial and sufficient ground, which is clearly stated in the case of Grissell v. Housatonic R. R. Co., 54 Conn., 447, where the court says: “There is no force in the objection that the statute under consideration unjustly selects only railroad corporations to bear the burden of an extraordinary risk. It is confined to them because they alone have the privilege of taking a narrow strip of land from each owner, without his consent, along the route selected for the track, and of traversing the same at all hours of the day and night, and at all seasons whether wet or dry, with locomotive engines that scatter fire along the margin of the land not taken, thereby subjecting all combustible property to extra- ” *338 ordinary hazard of loss, and that, too, for the sole profit of the corporation. The argument for the defendant is fallacious in erroneously assuming that the statute denies to the defendant a good defense which at common law all others would have under similar circumstances.” This view of the question is fully sustained by the Supreme Court of the United States in Missouri Pacific Railway Co. v. Mackey, 127 U. S., 205, where that court upheld the constitutionality of a statute of Kansas imposing for the future, upon every railroad corporation organized or doing business in that state, a liability to which no person or corporation was before subject, for all damages done to any of its employes by the negligence or mismanagement of their fellow-servants. The court said: “The hazardous character of the business of operating a railway would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employes, as well as the safety of the public. The business of other corporations is not subject to similar dangers to their employes; and no objections, therefore, can be made to the legislation on the ground of its making an unjust discrimination. It meets a particular necessity, and all railroad corporations are, without distinction, made subject to the same liabilities. As said by the court below, it is simply a question of legislative discretion whether the same liabilities shall be applied to carriers by canal and stage coaches, and to persons and corporations using steam in manufactories.”
Considerations of this nature are equally applicable to, and seem no less decisive of, the objection that this statute is without uniform operation throughout the state. As has been already observed, railroad companies are unlike other corporations wi th *339 respect to the character of their franchises, the nature and manner of carrying on their business, and the use of the agencies necessarily employed; and the danger from fires in the use of these agencies is more imminent, extensive and constant. And, since the statute is applicable to all railroad companies in the state, it operates uniformly throughout the state on all corporations of the same general class.
Whether any of the provisions of the statute are inapplicable to receivers operating railroads, is a question upon which we deem it unnecessary to express an opinion at this time. If they are not applicable, it must be because a receiver operating a road under the orders of a court occupies an exceptional position, and if so, the validity of the statute is unaffected. In determining that question the consideration of other legislation may become important.
Nor do we find it necessary to decide whether the third section of the act which provides for taxing as part of the costs, an attorney’s fee for the successful party on appeal, is valid, or not. No fee was allowed by the courts below, and none, is claimed here. And if that section should be held unconstitutional it is distinct and severable from the other provisions of the act, and could not affect their validity.
According to the view we take of the statute, the judgment in the Baltimore & Ohio Co’s, ease, and the judgment in the Lake Erie & Western Company’s case must be affirmed. And, we think, the judgment in the Cleveland, Lorain & Wheeling Company’s case must also be affirmed. We have already shown the demurrer to the petition was properly overuled. The only question of fact to which evidence was offered on the trial was whether the fire which destroyed the plaintiff’s property was caused by sparks from *340 an engine of the defendant. The evidence was circumstantial; and an effort was made by the defendant to show that the fire might have been caused by sparks from an engine on the Lake Erie & Western road, which ran nearer to the plaintiff’s property than did the defendant’s road. No evidence was offered to show the defendant exercised due care, and the only instruction requested on the subject of negligence was: “That unless the jury find the injury complained of resulted from the carelessness and negligence of the defendant in running and operating its road, then the verdict should be for the defendant.” It was not error to refuse that instruction, because if the jury should find the fire was caused as alleged in the petition, the plaintiff would be entitled to recover, unless they should find the defendant was free from negligence; for, as has been noticed, it being established that the fire was caused by sparks from the defendant’s engine, the burden was then upon the defendant to show it was without negligence. No instruction to that effect was requested; nor was that defense made by answer. If the instruction requested means that the plaintiff must show such negligence as the law implied from the fact that the fire was caused by sparks from the defendant’s engine, it was given in the general charge; for the court was quite emphatic in its instructions that the plaintiff could not recover unless that fact was established by a preponderance of the evidence. The refusal of the instruction therefore worked no prejudice to the defendant unless it means more, and required of the plaintiff, proof of negligence beyond and in addition to that stated.' In that sense it no doubt would have been understood by the jury, and in that sense it is clearly erroneous.

Judgments accordingly.