JOHNSON & WIMSATT, Inc., v. REICHEL-DERFER et al., District Com'rs.

No. 5275.

Court of Appeals of District of Columbia.
Argued March 3, 1931.
Decided May 4, 1931.

George E. Sullivan, of Washington, D. C., for appellant.

William W. Bride and Vernon E. West, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal from a final decree of the Supreme Court of the District of Columbia in a condemnation proceeding instituted by the Commissioners of the District of Columbia for the acquisition of a school site.

The land to be taken is all of squares numbered 415 and 439 in the southern part of the city of Washington near the Potomac river.

The appellant here was a respondent below, as owner of all of square 415, and nearly one-half of square 439, holding lots 4, 6, 7, 8, and 803, in square 439.

This property was improved by a small office building; certain fences; and other facilities for its use as a lumber yard, wherein the appellant has for many years conducted its lumber business.

The petition was filed and the decree made under the Act of Congress approved March 1, 1929 (45 Stat. 1437 [D. C. Code 1929, T. 25, §§ 41–50]), amending the Code in respect of the condemnation of land for school sites and certain other municipal purposes of the District of Columbia.

The petition is dated September 6, 1929; the award of the jurors, January 31, 1930; exceptions thereto by the appellant, February 19, 1930; the final decree overruling the exceptions, confirming the awards, and allowing this appeal on April 8, 1930. The record on appeal was filed in this court August 12, 1930.

The exceptions below and the contentions here are based upon alleged inadequacy of the awards to the appellant, and upon the testimony of the assessor of the District of Columbia as an expert witness for the District.

The first assignment of error rests upon the ruling of the court permitting Mr. Richards, assessor of the District of Columbia, to testify for the District as an expert witness on the market values of the lands involved; the objection going both to his official character and to his alleged lack of sufficient familiarity with the land to qualify him as an expert on its market value.

It is widely recognized that appraisements of property by tax assessors for purposes of taxation are not reliable guides of market value, and consequently not admissible in condemnation proceedings.

"The assessment of property for taxation, being made for another purpose, and not at the instance of either party, and not usually at the market value of the property, is not admissible as evidence in condemnation proceedings." Lewis, Eminent Domain, § 668.

"This court knows judicially and as a part of the financial history of the state that land is never assessed for purposes of taxation at its real cash market value, though that may be the law, but only in comparison with other lands around it." Wray v. Ry. Co., 113 Tenn. 544, 82 S. W. 471, 475.

To the same effect are Fort Collins Development Co. v. France, 41 Colo. 512, 92 P. 953; Brown v. Providence, etc., Ry. Co., 5 Gray (Mass.) 35; Martin v. Ry. Co., 62 Conn. 331, 25 A. 239; Birmingham, etc., Ry. Co. v. Smith, 89 Ala. 305, 7 So. 634; Texas & St. L. Ry. Co. v. Eddy, 42 Ark. 527.

And in the Washington Market Case, this court held it error to consider tax assessments in a condemnation proceeding. In re United States to Appraise Washington Market Co. Property, 54 App. D. C. 129, 295 F. 950.

In recognition of this doctrine the trial judge in this case instructed the commissioners of appraisement that: "You are instructed that you shall not take into consideration the assessed value of the land in question or give any consideration thereto or permit yourselves to become so informed in respect thereto in any manner; nor shall you make any private inquiries as to the value of such land, or anything concerning the same or relating thereto, but you shall rely only upon the evidence adduced and upon your view of the premises as hereinafter instructed."

But the record does not show that any cautionary instructions were given the commissioners in connection with the assessor's testimony.

The foregoing instruction, or the substance thereof, has long been used in such cases in this jurisdiction, as in many others, and while the assessor's testimony may differ from the assessor's assessments, it seems wholly impracticable to preserve the landowner's fundamental right of cross-examining him as a witness without violating the instruction of the judge to the jury.

For if his testimony agrees with the assessment, then the jury is indirectly considering the assessment, and becoming informed in respect of the assessment.

While if his testimony differs from the assessment, the difference cannot be brought out on cross-examination without considering the assessment, and without informing the jury in respect to the assessment.

Furthermore, the assessor of the District of Columbia is also ex officio chairman of the "Board of Equalization and Review," consisting of the assessor and the six assistant assessors. D. C. Code, Title 20, §§ 694, 702.

His duties in this capacity may thus make him the umpire in any question of disputed assessment between the taxing authorities and any taxpayer, while our statute requires condemnation juries or commissions to be composed entirely of freeholders.

In view of the widespread and growing distrust of expert witnesses in our courts, we cannot view with approval the practice of calling a salaried officer of the District of Columbia to give opinion evidence in a cause

338

where the District is a party litigant, and especially where the assessor of taxes testifies to a jury made up exclusively of the payers of taxes.

For these reasons we are of opinion that it was error to receive the assessor's testimony in this case, though, of course, we do not mean to intimate any criticism of the assessor, whom we have long recognized as an industrious and efficient public servant.

In view of our conclusion on the first assignment of error it becomes unnecessary to consider the others.

The decree is reversed with costs, and the cause remanded for further proceedings not inconsistent with this opinion.