[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Bernard Goldwater ("Goldwater"), the plaintiff in this case, purchased a used camper through the good offices of the defendant, Ollie's Garage (the "Garage"). The camper quickly turned out to be a lemon. Goldwater subsequently sued the Garage on a variety of theories. The case has been tried to the court. The facts about to be described are found by a fair preponderance of the evidence. (There is a count of fraud that requires a different burden of proof. The facts pertaining to that count will be discussed separately.)
The Garage is located in Cheshire. It is primarily a repair facility, but it is also licensed to sell used cars. At the time of the events in question, the Garage had an employee named John Bouteiller ("Bouteiller"), the son of the eponymous Ollie.
Bouteiller had an uncle named Lawrence Wild ("Wild"), who lived nearby. Wild owned a 1976 Dodge Coach Camper (the "Camper"), that is the cynosure of this case. At the time of the events in question, the Camper was 16 years old and had an odometer reading of 53,921 miles. It had been primarily used for camping.
Goldwater is disabled as a result of autism. The disability is mental rather than physical. Although he has made admirable strides toward independent living, his disability is self-evident. Anyone dealing with him could immediately realize that Goldwater is a judgmentally impaired person.
In July 1992, Goldwater brought another car to the Garage for repair. He mentioned to Bouteiller that he was interested in purchasing another vehicle, and Bouteiller told him of the Camper. Bouteiller told him that he had checked out the Camper and that it was in excellent shape and excellent mechanical condition. He further said that there was no trouble with the Camper, that it was in the family, and that there was absolutely nothing to worry about. Goldwater relied on this advice and, after a brief inspection and test drive, purchased the Camper on July 8, 1992. The purchase price was $9,000, consisting of $7,000 CT Page 1895 in cash and a trade-in worth approximately $2,000. Goldwater gave both the cash and the trade-in to Bouteiller. Bouteiller gave the cash to Wild and kept the trade-in for himself.
The relevant negotiations occurred at the Garage and were conducted by Bouteiller, who was an employee of the Garage and wearing an Ollie's Garage uniform. The Camper was at Wild's home, where Goldwater picked it up.
The Camper almost immediately began to develop problems resulting from a serious oil leak. More problems quickly followed. These multitudinous problems need not be described in the painstaking detail with which they were presented to the court. It is sufficient to say that the Camper, far from being in the excellent shape that was represented, was in horrendous shape and quickly became a money pit. After pouring several thousand dollars into this pit, Goldwater put the undriveable Camper in storage, where it currently resides.
Goldwater commenced this action in 1994. His amended complaint contains four counts directed against the Garage. The first count alleges fraud. The second count alleges deceptive statements in violation of Conn. Gen. Stat. § 42-225 (a). The third count alleges unfair and deceptive acts in violation of Conn. Gen. Stat. § 42-110b ("CUTPA"). The fourth count alleges a breach of express warranty in violation of Conn. Gen. Stat. § 42a-2-313, a provision of the Uniform Commercial Code ("UCC"). The Garage has asserted two special defenses. The first, applicable to all counts, is that any damage incurred by Goldwater was caused by his own misuse of the vehicle. The second, applicable only to the fourth count, is that prior to his purchase of the vehicle Goldwater had an opportunity to examine it as fully as he desired and that any implied warranty was excluded pursuant to Conn. Gen. Stat. § 42a-2-316. (There is a "third special defense as to count five" but there is no "count five" directed at the Garage.)
The case was tried to the court in January 1998. It was learned at the trial that Goldwater's mother, Leah Goldwater, had technically been the owner of the Camper for a few months following the purchase. It was agreed by the parties that a claim that she had made as a co-plaintiff would be withdrawn and that any damages that would otherwise be allotted to her would be awarded to her son. In addition, two separate counts of fraud that had been directed against Wild were dismissed pursuant to CT Page 1896 Practice Book § 302. The court reserved decision on the four counts against the Garage. Post-trial briefs were filed on February 10, 1998.
The first count alleges common law fraud. "It is well established that common law fraud must be proven by a higher standard than a fair preponderance of the evidence." Kilduff v.Adams, Inc., 219 Conn. 314, 327, 593 A.2d 478 (1991). (Footnote omitted.) The elements of this cause of action other than damages must be proven by clear and satisfactory evidence. Id. at 330. One of the essential elements of an action in fraud is that the representation on question "was untrue and known to be untrue by the party making it." Id. at 329. (Footnote omitted.) This element was sharply disputed at trial. Bouteiller does not deny making the representations about the Camper described above, but he asserts that those representations were, in fact, true. The Garage's theory of the case is that the Camper was in good condition at the time of purchase and was subsequently damaged by Goldwater's misuse. Given the conflicting evidence in this case, the burden of proof is of dispositive importance on the first count. Although, as will be seen, Goldwater prevails on those counts that need only be established by a fair preponderance of the evidence, he has not established by clear and satisfactory evidence that the representations in question were untrue and known to be untrue by the party making them. Judgment must consequently enter for the defendant on the first count.
With respect to Goldwater's remaining counts, the facts found by the court by a fair preponderance of the evidence are recited above. The elements of the causes of action set forth in those counts must now be considered. It will be useful to begin with the fourth count (breach of express warranty) since the law pertaining to that count has been developed to a comparatively high degree.
The fourth count, as mentioned, alleges a breach of express warranty under Conn. Gen. Stat. § 42a-2-313. That statute provides, in relevant part, as follows:
 (1) Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform CT Page 1897 to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. . . .
 (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but the affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.
The first issue that must be addressed with respect to this claim is whether the Garage was a "seller" within the meaning of the statute. "Seller" is a term of art in Article 2 of the UCC. It is defined by § 42a-2-103(1)(d) as "a person who sells or contracts to sell goods." A defendant's "status as a seller . . . is determined by examining the intent of the parties and the facts and circumstances of the transactions in question." StacoEnergy Products Co. v. Driver-Harris Co., 578 F. Sup. 700, 702
(S.D. Ohio 1983). The relevant factors in this analysis include "which party(ies) have received compensation, possessed the goods, and effected the transfer of goods, and which party guaranteed the quality of the goods." Id. at 703. The underlying principles are "known to every layman: A sale is a transfer of goods for consideration, and the seller is generally the party that receives the consideration and effects the transfer."American Container Corp. v. Hanley Trucking Corp., 268 A.2d 313,316 (N.J.Super.Ct. Ch. Div. 1970).
The question in this case is whether the Garage was the "seller" of the Camper. The evidence shows that most or all of the negotiations for the sale occurred at the Garage and were conducted by Bouteiller, who was an employee of the Garage and was wearing a Garage uniform. It was Bouteiller who guaranteed the quality of the Camper. The Garage was licensed to sell used cars. Under these circumstances, Goldwater could, and did, reasonably believe that Bouteiller's actions were authorized by the Garage. "Apparent authority is that semblance of authority which a principal through his own acts or inadvertances, causes or allows third persons to believe his agent possesses." CT Page 1898Tomlinson v. Board of Education, 226 Conn. 704, 734, 629 A.2d 33
(1993). (Internal quotation marks and citations omitted.)Tomlinson explains that the issue of apparent authority is one of fact to be determined based on two criteria. First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question. Second, the party dealing with the agency must have reasonably believed, under all the circumstances that the agent had the necessary authority to bind the principal to the agent's actions. Id. at 734-35. The credible evidence in this case establishes the existence of both of these criteria. First, the Garage by possessing a license to sell used cars, employing Bouteiller, and putting him on the premises in a Garage uniform held him out as possessing sufficient authority to sell the Camper. The fact that the Garage was a family enterprise and that Wild was, and was represented to be, a member of the family, added to this apparent authority. Second, Goldwater's acts, before, during, and after the sale show that he reasonably believed that Bouteiller acted as an agent of the Garage. He returned the Camper to the Garage for repairs on at least two occasions following the sale, and the Garage did nothing to indicate to him that another party had made the sale. Under these circumstances, the Garage was the "seller" of the Camper for purposes of the UCC.
The next question to be addressed is whether the representations that Bouteiller made concerning the quality of the Camper amounted to only an "opinion" as opposed to a warranty. As White and Summers point out in their authoritative treatise, the puffing-warranty distinction can be an intractable one. "Only a foolish lawyer will be quick to label a seller's statement as puffs or not puffs, and only a reckless one will label a seller's statement at all without carefully examining such factors as the nature of the defect (was it obvious or not) and the buyer's and seller's relative knowledge." 1 James J. White Robert S. Summers, Uniform Commercial Code § 9-4 at 488-89 (4th ed. 1995). Although "oral statements by used-car salesmen are notoriously unreliable," the vulnerability of the buyer is an important factor even in used-car cases. Id. at 488.
Several Connecticut cases illustrate this point. In Web PressServices Corp. v. New London Motors, Inc., 203 Conn. 342,525 A.2d 57 (1987), oral statements that a vehicle was in "mint" and "very good" condition were held to be non-specific puffing. The buyer in that case was a corporation that had adequate resources CT Page 1899 to look out for its own interests. In the older case of Lane v.McLay, 91 Conn. 185, 99 A. 498 (1916), an oral statement that a car would be put in "first-class running condition" was held to create a warranty. The buyer in that case was an individual, whose experience and sophistication is not described. In a more recent used-car case, the Appellate Division of the Circuit Court found the fact that the buyer was "young man with little business experience" relevant in determining the existence of a warranty.Barton v. American Dodge, Inc., 2 Conn. Cir. Ct. 90, 194 A.2d 720 (1963). Although the generality and the oral nature of a representation are undoubtedly important, these cases underline the caution of White and Summers that there is no bright-line test in this area. The totality of the circumstances must be considered.
The key factors, as White and Summers explain, are the nature of the defect and the buyer's and seller's relative knowledge. Here, the principal difficulty with the Camper was the poor quality of its engine. This defect would not have been obvious to a buyer without mechanical experience. The seller was a garage, with extensive mechanical knowledge. Goldwater understandably relied on this knowledge. The buyer, as previously discussed, was a judgementally disabled man with little or no mechanical knowledge. His reliance on the Garage's knowledge was reasonable. Under the totality of the circumstances, the representations concerning the quality of the Camper created an express warranty.
The Garage's special defense must now be considered. The Garage relies on Conn. Gen. Stat. § 42a-2-316(3)(b). That statute provides in relevant part, that "when the buyer before entering into the contract has examined the goods . . . as fully as he desired . . . there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him." This special defense is applicable only to claims of "implied warranty." See UCC § 2-316 cmt. 9,reprinted at 19 Conn. Gen. Stat. Ann. 122 (1990). The claim here is one of express warranty. The asserted special defense thus has no application to the case at hand.
For the reasons set forth above, I conclude that the Garage was a seller, that it made an express warranty that the Camper was in excellent shape and in excellent mechanical condition, and that, since the Camper was in fact in horrendous shape, there was a breach of this express warranty. CT Page 1900
The second count of Goldwater's complaint alleges deceptive statements in violation of Conn. Gen. Stat. § 42-225 (a). That statute provides, in relevant part, that, "No dealer may make any . . . deceptive statements about the condition . . . of any used motor vehicle offered for sale." The term "dealer" includes "any person, firm or corporation licensed . . . as . . . a used car dealer." Conn. Gen. Stat. § 42-220 (1). The evidence shows that the Garage is a "dealer" of this description. For the reasons discussed above, Bouteiller had, at a minimum, apparent authority to make statements concerning used cars on its behalf.
Our Supreme Court, following federal authority, has explained that an act or practice is deceptive if three requirements are met. "First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material — that is, likely to affect consumer decisions or conduct." Caldor, Inc. v. Heslin, 215 Conn. 590, 597,577 A.2d 1009 (1990), cert. denied, 498 U.S. 1088 (1991). (Internal quotation marks and citation omitted.) The statements at issue here meet this definition. First, they were likely to mislead the consumer, i.e. Goldwater. Goldwater would reasonably expect that the Garage, given its expertise, had some basis for making the claim. See American Financial Services Association v. FederalTrade Commission, 767 F.2d 957, 980 n. 27 (D.C. Cir. 1985), cert.denied, 475 U.S. 1011 (1986). Second, Goldwater, given the Garage's expertise and his lack of it, interpreted the message reasonably under the circumstances. Third, the misleading representation (i.e. the claims that the Camper was in excellent shape and excellent mechanical condition) was material in that it was likely to affect Goldwater's decision to purchase the Camper. The statements at issue here were consequently deceptive statements in violation of § 42-225 (a).
Goldwater's third count alleges a CUTPA violation. Conn. Gen. Stat § 42-110b(a) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Our Supreme Court has explained that:
 It is well settled that in determining whether [an act or] practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for CT Page 1901 determining whether [an act or] practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy.
Saturn Construction Co. v. Premier Roofing Co., 238 Conn. 293,310-11, 680 A.2d 1274 (1996). (Internal quotation marks and citation omitted.) The facts in this case amply establish a CUTPA violation. For reasons already discussed, there was an actual deceptive practice. The criteria set out in the cigarette rule, taken together, also establish a CUTPA violation.
The final question that must be addressed is the appropriate amount of damages to be awarded. The court's task in this regard has been immensely complicated by the presentation of numerous bills unaccompanied by credible evidence connecting them with the deceptive statements that form the basis of the Garage's liability in this case. The fact that the Garage is responsible for the deceptive statements described above does not make it liable for every repair that the Camper subsequently required.
Several considerations are important in this regard. First, the Camper was obviously an old vehicle at the time of purchase and required significant care and maintenance that would be appropriate for any vehicle of its age no matter how excellent its condition. Second, two defects complained of — the poor condition of its tires and the absence of a generator — were open and obvious defects that there is no evidence that the Garage attempted to conceal. Third, there is credible evidence that CT Page 1902 Goldwater himself damaged the rear end of the Camper in an accident unconnected with the mechanical condition of the vehicle. (To that extent, the first special defense is supported by credible evidence.) Finally, the plaintiff may only recover those damages that he has proven by a fair preponderance of the evidence to have been caused by the defendant's breach of duty.
After considering all of the evidence, I conclude that Goldwater has proven the following items of damages for which invoices are in evidence:
(1) 8/26/92 — Installation of rebuilt motor $2,962.47
(2) 9/9/92 — Repair of U-Joints 144.14
(3) 9/15/92 — Repair of brakes 286.66
(4) 1/23/93 — Repair of transmission 690.00
Total Damages $4,083.27
In addition to repair bills Goldwater requests damages in the amount of the difference between the Camper's actual value at the time of sale and the amount that he paid for it. While damages of this description are conceptually appropriate, the problem in this case is that there is no probative evidence concerning the actual value of the Camper. The only evidence concerning its actual value is a post-sale tax assessment by the City of New Haven. The valuation put upon property by assessors for the purpose of taxation is not, however, admissible in a suit against other parties for the purpose of proving the actual value of the same property. Martin v. New York N.E.R.R., 62 Conn. 331, 343,25 A. 239 (1892). Accord Mead v. Town of Greenwich,131 Conn. 273, 277, 38 A.2d 795 (1944).
For the reasons discussed above, judgment shall enter in favor of the defendant on the first count. Judgment shall enter in favor of the plaintiff on the second, third, and fourth counts in the total amount of $4,083.27. Costs are awarded.
Jon C. Blue Judge of the Superior Court CT Page 1903